

CONTRATO DE CUSTODIA PARA CLIENTES INDIVIDUALES

Nosotros, **INVERSIONES SAMA, S.A PUESTO DE BOLSA** con cédula de persona jurídica número tres ciento uno - cero treinta y dos mil seiscientos treinta y nueve, en adelante denominado **"EL CUSTODIO"**, representada por **Henry Zamora Castro**, mayor casado una vez, Máster en Administración de Negocios, vecino de Rohrmoser, San José, cédula de identidad número nueve-cero sesenta y uno-novecientos veintinueve, y **Rolando Cervantes Barrantes**, mayor casado una vez, agente de bolsa, vecino de Sabanilla de Montes de Oca, San José cédula de identidad número uno-cuatrocientos once-trescientos setenta y siete, actuando en forma conjunta con facultades de apoderado generalísimo sin límite de suma, y . ṆḀḶṖḀ ḶṆ ṂṂ....., cédula de identidad (cédula jurídica) número ḸḀ ḸṎḸḀḸṎṠ., en adelante denominado **"EL DEPOSITANTE"**, considerando:

I.   Que **INVERSIONES SAMA, S A** es un puesto de bolsa debidamente regulado por la Superintendencia General de Valores
II.  Que **INVERSIONES SAMA, S.A** de acuerdo al Reglamento de Custodia, emitido por el Consejo Nacional de Supervisión del Sistema Financiero, mediante artículo 13 de la Sesión 593-2006 del 27 de julio del 2006, se encuentra autorizado para brindar los servicios de custodia y administración de valores.
III. Que **INVERSIONES SAMA, S A**, en razón de lo anterior asegura al **DEPOSITANTE** que posee la infraestructura técnica, humana y tecnológica, para brindar un servicio de custodia eficiente, de acuerdo con los requisitos establecidos en el reglamento respectivo
IV.  Que **EL DEPOSITANTE** en razón de las regulaciones existentes en el mercado de valores, debe suscribir un contrato de esta naturaleza con una entidad de custodia, para que sus valores sean administrados según las atribuciones propias de un custodio B

Por lo tanto **HEMOS CONVENIDO** en celebrar el presente **CONTRATO DE CUSTODIA**, el cual se regirá por la Ley Reguladora del Mercado de Valores, el Reglamento de Custodia, y las disposiciones generales que emita la Superintendencia General de Valores y el Consejo Nacional de Supervisión del Sistema Financiero, además de las disposiciones del Código de Comercio en lo que pudiera resultar aplicable y por las siguientes cláusulas:

**PRIMERA: De la terminología empleada y sus correspondientes definiciones**. Las partes acuerdan que para efectos de interpretar, aplicar y ejecutar el presente contrato, usarán, la siguiente terminología con las definiciones señaladas:
1.  **Custodio:** Entidad debidamente autorizada que brinda el servicio para el depósito, cuidado y conservación de valores, así como del efectivo relacionado con estos, con la obligación de devolver al depositante valores del mismo emisor, de la misma especie y las mismas características de los que fueron depositados o el efectivo relacionado con estos, cuando éste lo requiera
2.  **Titular:** Dueño o propietario de los valores o efectivo depositados en la entidad de custodia
3.  **Depositante:** Persona que suscribe un contrato de custodia
4.  **Ordenante:** Persona autorizada expresamente por el titular para girar instrucciones a la entidad de custodia
5.  **Valor:** cualquier derecho de contenido económico o patrimonial, incorporado o no en un documento, que por su configuración jurídica propia y régimen de transmisión puedan ser objeto de negociación en un mercado de valores
6.  **Desmaterialización:** valores representados por medio del instrumento denominado macrotítulo y por medio de anotaciones electrónicas en cuenta
7.  **Liquidador:** entidad encargada de liquidar el dinero correspondiente a los contratos que se realicen en los distintos mercados organizados
8.  **Asignación:** actividad por medio de la cual se identifica el titular final de las prestaciones debidas en virtud de un contrato (valores o dinero)  Por medio del proceso de asignación se pueden vincular varios contratos de compra o de venta a un solo titular o un solo contrato a varios titulares
9.  **Código ISIN:** sistema de numeración reconocida internacionalmente que permite la identificación de las emisiones de valores
10. **Cuenta de custodia:** cuenta que se utiliza para custodiar el efectivo y los valores de una persona física y jurídica

**SEGUNDA: Del servicio en general** EL **DEPOSITANTE**, ha contratado con **EL CUSTODIO** el servicio de custodia de acuerdo con la calificación B del Reglamento Que para estos efectos y en razón de la condición que tiene el **DEPOSITANTE**, su cuenta se califica de inversionista individual
**TERCERA: Del servicio que comprende la custodia**. De acuerdo con lo establecido en el Reglamento, el servicio de la custodia, sin perjuicio de las funciones y actividades que se detallen en otras cláusulas, reglamentos o disposiciones, comprende lo siguiente:
a   La recepción de valores en custodia para la realización de operaciones
b   El servicio de liquidación de las operaciones bursátiles que se realicen con los valores objeto de custodia
c   La administración y manejo del registro contable de los valores, tanto físicos como desmaterializados.
d   La administración y custodia del efectivo relacionado con los valores objeto de custodia, según lo indicado en el literal siguiente
e   La administración de los valores en custodia, lo cual comprende el cobro de amortizaciones, dividendos, intereses, así como de cualesquiera otros derechos patrimonial derivados de los valores objeto de custodia

**CUARTA: De los aspectos operativos relacionados con el servicio.** **EL DEPOSITANTE** queda entendido que el servicio de custodia lo dará **EL CUSTODIO** de conformidad con lo contemplado en el Manual de Procedimientos del Servicio de Custodia

**QUINTA: De los datos relacionados con el tipo de cuenta y ordenantes.** **EL DEPOSITANTE** manifiesta que nombra como ordenantes, a las personas indicadas en el documento que para esos efectos le ha sido presentado por el **CUSTODIO**, según las condiciones de uso y aplicación, limitaciones y atribuciones que ahí se indican  Como complemento a lo anterior, **EL DEPOSITANTE Y LOS ORDENANTES** autorizan expresamente y se manifiestan de acuerdo que "El **CUSTODIO**" grabe las conversaciones sostenidas con él o con cualesquiera d

Teléfono: (506) 296-7070  Fax: (506) 296-2400  Edificio Grupo Sama  Sabana Sur  Calles 46 y 48  Av 10  Apdo : 7611-1000 San José
www.gruposama.com  -  gruposama@sama.co.cr

**EXHIBIT A**



CONTRATO DE CUSTODIA PARA CLIENTES INDIVIDUALES

representantes para el giro de instrucciones u órdenes de negociación, adiciones, ampliaciones o aclaraciones a las mismas, y que dichas grabaciones podrán ser utilizadas en cualquier proceso administrativo o judicial, aceptándolas como prueba de cargo o de descargo En el caso de que la composición de las firmas sea mancomunada, se requerirá que las instrucciones sean por escrito Se entenderá que las instrucciones por escrito son una obligación del cliente con independencia de que con motivos de oportunidad de mercado, **EL CUSTODIO** actúe con las instrucciones verbales giradas previamente, caso en el cual el **DEPOSITANTE** manifiesta que acepta que las instrucciones relacionadas con la ejecución del presente contrato sean realizadas por medio de cualquiera de los siguientes medios de comunicación: Instrucción telefónica, correo electrónico, facsímil, por medio de instrucciones entregadas en documento original

**SEXTA: Del suministro de información**. EL CUSTODIO asume el compromiso de enviar estados de cuenta mensuales, dentro de los primeros diez días hábiles posteriores al cierre de cada periodo Dicho plazo podrá variar de acuerdo con instrucciones que emita la Superintendencia General de Valores Dichos estados de cuenta deberán contener al menos la siguiente información:
a) Fecha de Corte
b) Fecha de emisión del estado de cuenta
c) Nombre del titular de los valores
d) Dirección a la que se debe entregar el estado de cuenta
e) Número o código de identificación de la cuenta
f) Identificación de los valores en depósito
g) Cantidad de valores
h) Valores faciales
i) Saldo del efectivo
j) Fecha de vencimiento de los valores
k) Código ISIN
l) Precio de Compra
m) Tasa Facial
n) Detalle de los movimientos registrados durante ese periodo
o) Estado de los valores y del efectivo (disponible, bloqueado, pignorado)
p) Existencia y descripción de limitaciones o gravámenes
q) Estado de las posiciones (pendientes de contado, pendientes futuro)

Dicha información, así como cualquiera otra solicitada por **EL DEPOSITANTE** o sus **ORDENANTES**, se hará llegar al domicilio bursátil consignado en la hoja de información del **DEPOSITANTE** Salvo disposición o solicitud expresa en contrario, la misma le será dirigida al representante legal acreditado ante el **CUSTODIO**

**SÉTIMA: De las instrucciones sobre liquidación, gestión de valores y de efectivo** Las partes acuerdan que lo referente a este artículo se regula de acuerdo con el Manual de Procedimientos del Servicio de Custodia

**OCTAVA: Del deber de restitución de los valores.** De acuerdo con lo estipulado por la normativa correspondiente, al concluir el depósito, el **CUSTODIO** queda obligado a restituir al **DEPOSITANTE** valores del mismo emisor, de la misma especie y las mismas características de los que fueron depositados En el caso de valores emitidos físicamente, a la orden o nominativos, con la restitución cesarán los efectos del endoso en administración; el **CUSTODIO** deberá endosarlos sin responsabilidad al depositante que solicite su devolución Los valores quedarán sujetos al régimen general establecido en la legislación mercantil, en cuanto les sea aplicable Desde el momento en que los valores son entregados física o virtualmente al **DEPOSITANTE** o a quien éste indique por escrito, cesa toda responsabilidad **DEL CUSTODIO** con respecto a dichos valores

**NOVENA: Del deber de emitir constancias y de diferenciar las cuentas.** El **CUSTODIO** queda obligado a mantener los valores del **DEPOSITANTE** en una cuenta independiente, de la cual éste último será el titular Igualmente, emitirá constancias sobre los valores depositados cuando así se lo requiera el **DEPOSITANTE**, a solicitud de autoridad judicial competente, o del acreedor que cuente con garantía sobre el valor, en cuyo caso, la constancia lo será únicamente sobre el gravamen existente Estas constancias servirán para demostrar la titularidad de los valores y ejercer los derechos derivados de los valores depositados o, en su caso, para demostrar la existencia de un gravamen existente sobre los valores Las constancias de depósito constituirán documentos no negociables y al menos contendrán la siguiente información:
a) Nombre del titular de los valores
b) Identificación del emisor
c) Identificación de la emisión
d) Valor nominal o cantidad de valores
e) Número de valores que comprende el depósito
f) Monto del efectivo custodiado
g) Fecha de vencimiento del valor o valores
h) Estado de los valores (disponible, bloqueado, pignorado)
i) Existencia y descripción de limitaciones o gravámenes
j) Fecha y hora de expedición de la constancia



CONTRATO DE CUSTODIA PARA CLIENTES INDIVIDUALES

k) Indicación expresa de la no negociabilidad de la constancia
l) Indicación expresa de que serán nulos los actos de disposición que tenga por objeto la constancia, de acuerdo con lo establecidos en la Ley Reguladora del Mercado de Valores
m) Fecha de expiración de la constancia
n) Firma del funcionario encargado del registro de valores, debidamente autorizado por el representante legal
o) Sello del custodio

Será obligación del **CUSTODIO** expedirlas en un plazo máximo de tres días contados a partir del recibo de la respectiva solicitud y el plazo de vigencia será de un día hábil a partir de su expedición. La emisión de constancias solicitadas por el **DEPOSITANTE** tendrá un costo de cinco dólares o su equivalente en colones, calculados con base en el tipo de cambio de venta vigente al momento de la expedición.

**DECIMA: De la responsabilidad del custodio** El **CUSTODIO**, deberá cumplir con diligencia y eficiencia las funciones y servicios bajo su responsabilidad, en los términos previstos en las disposiciones legales, reglamentarias y contractuales, de manera que deberá responder al **DEPOSITANTE**, sin perjuicio de otras situaciones enumeradas claramente por el ordenamiento jurídico, por las siguientes:
a. Por los menoscabos, daños y perjuicios ocasionados por robo, pérdida o extravío que los valores y efectivo depositados sufran por culpa, dolo o negligencia suya, de sus empleados o de terceros, que realicen labores por su cuenta
b. Cuando sus funcionarios, asesores o terceros contratados para realizar labores por su cuenta, brinden información considerada confidencial por la legislación, salvo por autorización expresa del **DEPOSITANTE**, o que la información haya sido solicitada por autoridad judicial competente o por la Superintendencia General de Valores
c. Por aquellas situaciones en la que sus funcionarios, asesores o terceros contratados para realizar labores por su cuenta, utilicen la información confidencial en beneficio propio o de terceros
d. Por la existencia y manejo eficiente de los valores y el efectivo asociado a esos valores en las entidades de depósito o custodios en el extranjero donde el **CUSTODIO** mantenga firmados contratos de custodia

**DECIMA PRIMERA: Del deber de conciliación de parte del CUSTODIO** De acuerdo con la regulación vigente, será obligación del **CUSTODIO** registrar diariamente los movimientos que afecten los registros de los valores en custodia, conciliar mensualmente los registros de sus sistemas con los del Sistema de Anotación en Cuenta, los de Entidades de Depósito y los de Custodios Extranjeros y dejar evidencia de dichas conciliaciones. Las conciliaciones se harán a nivel de cuentas individuales. Las conciliaciones estarán disponibles para las revisiones de auditoría, por lo que el **CUSTODIO** las archivará de tal manera que su consulta sea rápida y las mantendrá por un plazo no inferior a los últimos seis meses. Adicionalmente, se mantendrán disponibles durante los últimos cinco años aquellas conciliaciones que coincidan con el día en que es enviado el estado de cuenta mensual a los clientes.

**DECIMA SEGUNDA: De las responsabilidades básicas del DEPOSITANTE** Sin perjuicio de otras responsabilidades que surjan de otras cláusulas o disposiciones legales y reglamentarias, el **DEPOSITANTE** asume la siguiente responsabilidad
a. Realizar todas las gestiones necesarias para que se ejecute el traslado y entrega al **CUSTODIO** de los valores que forman parte de su cartera
b. Cancelar los honorarios establecidos en los términos y condiciones que se definan a más tardar dentro de los cinco primeros días hábiles de cada mes
c. Velar por la autenticidad de los valores objeto de depósito y de la validez de las transacciones de las que proceden cuando se traten de títulos físicos y otros no transados a través de **INVERSIONES SAMA, S.A.**
d. Realizar la verificación de los estados de cuenta que se le envíen, con la finalidad de determinar la realidad de los saldos. En caso de que transcurran quince días hábiles sin haber comunicado objeción alguna, se entenderá que lo detallado en el estado de cuenta es aceptado por el **DEPOSITANTE**. Para estos efectos, las partes declaran expresamente que los errores materiales en la consignación de datos, no crea derecho patrimonial o económico a favor de la parte favorecida
e. No obstaculizar o impedir cualquier devolución de valores o de efectivo que se deba realizar, por haberse asignado a su cuenta de forma equivocada por el **CUSTODIO**. Una vez que se haya detectado el error y se comunique el mismo al **DEPOSITANTE** por escrito, éste gozará de un plazo de tres días para ejecutar el reintegro respectivo
f. Girar al **CUSTODIO** las órdenes en una forma clara, correcta, precisa, suficiente y oportuna, de manera que el **CUSTODIO** pueda realizar su función
g. Cualquier otra señalada por el ordenamiento jurídico

**DECIMA TERCERA: Causas en la que no hay responsabilidad por parte del CUSTODIO** Sin perjuicio de lo que determine el ordenamiento jurídico, el **CUSTODIO** no será responsable ante el **DEPOSITANTE**, en los siguientes eventos:
a. Por la cesación parcial o total de pagos del emisor de los valores objeto de custodia
b. Por las consecuencias jurídicas o económicas del acatamiento de las instrucciones u órdenes giradas por el **DEPOSITANTE**
c. Por variaciones en los precios de los valores, cambios en las tasas de interés, cesación parcial o total de pagos del emisor, administración y reorganización con intervención judicial, insolvencia y quiebra del emisor, intervención administrativa por parte de la Superintendencia de Entidades Financieras (SUGEF) u otra autoridad reguladora, y cualquier otro hecho o situación que tenga que ver con los valores objeto de custodia
d. Por todas aquellas acciones u omisiones, negligentes o dolosas, que procedan de funcionarios, personeros, asesores o terceros contratados por el **DEPOSITANTE** para realizar labores a su favor

Case 08-20297-rlj7   Doc 58-2   Filed 11/06/08   Entered 11/06/08 17:55:10   Desc
Exhibit Group SAMA Investment Documents   Page 4 of 19

27

G.S
GRUPO SAMA

Contrato N°

**CONTRATO DE PARTICIPACIÓN EN LOS FONDOS DE INVERSIÓN ADMINISTRADOS POR SAMA SOCIEDAD DE FONDOS DE INVERSIÓN (G S ) S.A**

Nosotros, SAMA Sociedad de Fondos de Inversión (G S.) Sociedad Anónima, con cédula de persona jurídica número tres -- ciento uno- cero sesenta y cinco mil treinta y siete, en adelante denominada SAMA S A F I S A, representada en este acto por Henry Zamora Castro, mayor casado, Master en Administración de Empresas, cédula nueve-cero sesenta y uno-nueve veintinueve, vecino de Rohrmoser, San José, personería inscrita en la Sección Mercantil del Registro Público, y El INVERSIONISTA, identificado al final de este documento

**CONSIDERANDO**
I Que SAMA S A F I S A es una sociedad anónima cuyo objeto único es prestar servicios de administración de fondos de inversión y que se encuentra debidamente autorizada para esos fines por la Superintendencia General de Valores (SUGEVAL)
II Que los Fondos de Inversión administrados por SAMA S A F I S A están debidamente autorizados por la Superintendencia General de Valores para hacer oferta pública.
III Que el INVERSIONISTA declara que ha sido debidamente informado por SAMA S A F I S A de las características de los Fondos de Inversión que administra denominados:

| FONDOS FINANCIEROS ABIERTOS | FONDOS FINANCIEROS CERRADOS |
|---|---|
| F.I. Sama Ingreso Mensual Mixto Colones – No Diversificado | F I. CFS Internacional Crecimiento USD |
| F.I. Sama Ingreso Mensual Dólares – No Diversificado | F.I. CFS Internacional Ingreso USD |
| F.I. Sama Crecimiento Colones – No Diversificado | F.I. CFS Internacional Crecimiento EUR |
| F.I. Sama Crecimiento Público Colones – No Diversificado | |
| F.I. Sama Crecimiento Público Dólares – No Diversificado | |
| F.I. Sama Liquidez Público Colones – No Diversificado | |
| F.I. Sama Liquidez Dólares – No Diversificado | |

IV Que SAMA S A F I, S A le ha entregado al INVERSIONISTA el prospecto correspondiente
Hemos convenido celebrar el presente Contrato de Participación en el o los Fondos de Inversión el cual se regirá por las siguientes cláusulas:
**PRIMERA: Objeto.** El presente contrato regula la participación del INVERSIONISTA en el o los Fondos de Inversión administrados por SAMA S A F I S.A.
**SEGUNDA: Destino de los recursos del INVERSIONISTA** Los recursos que el INVERSIONISTA entregue a SAMA S A F I. S A serán invertidos en el o los Fondos de Inversión que el INVERSIONISTA elija, lo cual será documentado en la orden de inversión según el o los fondos seleccionados por el INVERISIONISTA
**TERCERA: Copropiedad del fondo** El fondo de inversión es un patrimonio separado, propiedad de los inversionistas que han aportado su dinero para su inversión en títulos valores El INVERSIONISTA será copropietario del fondo de inversión en forma proporcional al monto de su inversión en dicho fondo. Su derecho de propiedad estará representado por medio de participaciones y sobre las mismas no se da garantía de un rendimiento determinado. SAMA SAFI S.A llevará el registro de los INVERSIONISTAS, así como del número de participaciones que éstos posean en el o los fondos en que estén participando.
**CUARTA: Derechos que confiere la participación en el fondo de inversión.** La participación en el o los fondos de inversión confiere al INVERSIONISTA el derecho a una parte alícuota en las ganancias o pérdidas que genere el o los fondos en que participa La ganancia o pérdida se verá reflejada en el precio de la participación, el cual se calculará de conformidad con lo establecido al respecto en el Prospecto.
**QUINTA: Obligaciones de SAMA S.A.F.I. S A** En su calidad de administrador profesional de Fondos de Inversión SAMA S A F I S A asume las siguientes obligaciones con el INVERSIONISTA:
A- Seleccionar los valores que formarán parte de la cartera del o de los fondos de inversión
B- Realizar las labores de administración de la cartera, lo cual implica, aunque no sólo limitado a ello, cobrar intereses, dividendos, hacer legalizaciones en casos de quiebra, retirar acciones adicionales en casos de splits En el ejercicio de esta labor SAMA S.A.F I S A no podrá multiplicar las transacciones de forma innecesaria y sin beneficio para el cliente, o provocar una evolución artificial del precio de las participaciones
C- Realizar las labores administrativas correspondientes al fondo de inversión dentro de las que están, pero no sólo limitadas a ellas, contratar auditores externos, aplicar los precios diarios, tramitar reembolsos, cancelar impuestos,
**SEXTA: Recursos idóneos.** Para realizar adecuadamente sus labores SAMA S A F I S A cuenta con la organización idónea y con los recursos materiales y el personal debidamente calificado, por lo cual se compromete a brindar un servicio adecuado como administrador de fondos de inversión.
**SÉTIMA: Inversión de los recursos del o de los Fondos** SAMA S A F I S A no recibirá instrucciones especiales de los INVERSIONISTAS en relación con la inversión de los recursos aportados por éstos Las decisiones de inversión serán tomadas por un Comité de Inversión, integrado por personas con experiencia en la inversión de recursos en los mercados de valores Estas decisiones se tomarán en estricto apego a las políticas de inversión contenidas en el prospecto del o de los fondos de inversión las cuales únicamente podrán ser modificadas previa aprobación de la Superintendencia General de Valores
**OCTAVA: Responsabilidad de SAMA S.A.F I S A por la inversión de los recursos del o de los fondos.** Queda entendido el INVERSIONISTA que el rendimiento del o de los fondos en que participa, dependerá del comportamiento de la cartera de valores propiedad del o de los fondos de inversión respectivos. Igualmente, queda entendido que SAMA S A.F I. S A no asume responsabilidad alguna por la solvencia de los emisores de los valores en los que invierta el o los fondos de inversión que administra No obstante lo anterior, SAMA S.A.F I S.A reconoce su responsabilidad por la adecuada selección de los valores en los cuales se invertirán los recursos del o de los fondos de inversión que administra En este sentido, SAMA S.A.F I S A se compromete a tomar las decisiones de inversión, ya sea de compra o de venta de valores, con la debida diligencia, para lo cual estudiará en cada caso la información disponible en el mercado sobre los diferentes emisores y realizará los análisis que sean necesarios a efectos de determinar la cartera adecuada a los objetivos y parámetros definidos en el prospecto para el o los fondos de inversión que administra
**NOVENA: Tratamiento de valores de emisores en suspensión o cesación de pagos** En el caso de que un emisor cuyos valores formen parte de la cartera del o de los fondos de inversión en el o los que el INVERSIONISTA participa entre en suspensión o cesación de pagos, SAMA S A F I. S.A. procederá a excluir dichos valores de la cartera del o de los fondos de inversión de que se trate. Paralelamente, abrirá cuentas de orden a favor de los INVERSIONISTAS que formaban parte del o de los fondos de inversión al momento de la suspensión o cesación de pagos, de modo que cualquier suma que se recupere en relación con tales valores será pagada a tales INVERSIONISTAS En caso de que deba procederse de esta forma SAMA S A F I S A informará a los INVERSIONISTAS en el siguiente estado de cuenta acerca de las medidas ejecutadas al respecto
**DÉCIMA: Conflictos de interés.** SAMA S.A.F I S A. es propiedad del Grupo Consolidado SAMA S A; sin embargo se compromete a actuar con independencia en la toma de decisiones anteponiendo en todo momento los intereses de los fondos de inversión que administra a los del grupo financiero
**DÉCIMO PRIMERA: Respeto por la legalidad.** SAMA S.A.F I S A se compromete a cumplir con las normas legales, reglamentarias y las disposiciones administrativas emanadas de la Superintendencia General de Valores y del Consejo Nacional de Supervisión del Sistema Financiero
**DÉCIMO SEGUNDA: Custodia.** Los valores propiedad del o de los fondos de inversión que administra SAMA S.A.F I S.A serán custodiados por Inversiones Sama, S.A Puesto de Bolsa y depositados en la Central de Valores, S A (CEVAL) de la Bolsa Nacional de Valores, S A Los valores emitidos por medio de macrotítulo o anotación en cuenta, serán mantenidos por la entidad de custodia en una cuenta separada a nombre del o de los fondos de inversión correspondientes Inversiones Sama, S A Puesto de Bolsa se constituirá en el custodio del efectivo que sea estrictamente necesario tener en circulación, el

Teléfono: (506) 296-7070   Fax (506) 296-2400   Edificio Grupo Sama, Sabana Sur, Calles 46 y 48, Av. 10, Apdo. 7611-1000 San José, Costa Rica.

cual se mantendrá en cuentas corrientes de entidades del Sistema Bancario Nacional que se distingan por su reconocido prestigio y solvencia. En ese sentido, SAMA S.A.F.I. S A advierte expresamente al INVERSIONISTA que ello implica una existencia de riesgos derivados de la administración los cuales el INVERSIONISTA acepta y reconoce

**DECIMO TERCERA: Reembolsos** El INVERSIONISTA podrá solicitar a SAMA S.A F I S A el reembolso total o parcial de sus participaciones en el o los fondos de inversión en que participa en cualquier momento, sin perjuicio del pago de comisiones de salida si así lo establece el Prospecto El reembolso se realizará dentro de los plazos establecidos en el Prospecto Las participaciones en los Fondos de Inversión Cerrados no serán reembolsables directamente por el Fondo, salvo en las circunstancias y procedimientos previstos en la Ley Reguladora del Mercado de Valores ya que deberán negociarse en el mercado secundario de la Bolsa Nacional de Valores, S A para lo cual el INVERSIONISTA deberá solicitarlo así a SAMA S A F I En este último caso las comisiones serán pactadas libremente entre la partes.

**DECIMO CUARTA: Comisiones.** SAMA S A F.I S A recibirá una comisión de administración por el servicio de administración del o de los fondos de inversión en que el INVERSIONISTA participa El monto de esta comisión será fijado por SAMA S A F I. S A , dentro del monto máximo establecido en el Prospecto SAMA S A F I S A podrá realizar ajustes mensuales a la comisión, pero siempre dentro del monto máximo establecido en el Prospecto. Los cambios a la comisión serán comunicados al INVERSIONISTA a través de su estado de cuenta con un mes de anticipación Adicionalmente, SAMA S A F I. S A podrá percibir comisiones de suscripción o redención así como cualquier otro tipo comisión, siempre y cuando se contemple en el Prospecto y por el monto establecido en éste

**DECIMO QUINTA: Estados de cuenta** SAMA S A F I S A. se compromete a enviar al INVERSIONISTA estados de cuenta en forma mensual a la dirección consignada en la boleta denominada "Información del Cliente", la cual forma parte integral de la apertura de la cuenta cliente

**DECIMO SEXTA: Información disponible en las oficinas de SAMA S A F I SA** SAMA S A F I S A tendrá en sus oficinas a disposición de los INVERSIONISTAS, la siguiente información:
a) Prospecto de los fondos de inversión que administra  b) Composición actualizada de la cartera de cada fondo de inversión que administra  c) Libros de actas del Comité de Inversión

**DECIMO SETIMA: Notificaciones.** La dirección que el INVERSIONISTA indique en la boleta denominada "Información del Cliente" será la que se considere oficial para efectos de notificaciones, además será responsabilidad del INVERSIONISTA su actualización.

**DECIMO OCTAVA: Actualización de la Información.** El inversionista será el responsable de comunicar a SAMA S A F I S A. cualquier cambio en sus datos de cliente y de actualizar, en caso de inversionistas jurídicos cualesquiera cambios en la representación legal y de suministrar la personería jurídica con la actualización correspondiente

**DECIMO NOVENA: Personas autorizadas.** Las personas que se señalan en la boleta denominada "Información del Cliente", documento que se completa para la apertura de la cuenta cliente, quedan autorizadas por EL INVERSIONISTA, para girar instrucciones, ya sea parciales o totales, según ahí se indique, para el retiro o recepción de documentación o para el retiro de cheques, incluyendo las correspondientes a las liquidaciones de solicitudes de reembolso de participaciones de fondos abiertos hechas por EL INVERSIONISTA o venta en mercado secundario de las participaciones en fondos cerrados, reservándose EL INVERSIONISTA la posibilidad de revocarlas por escrito en cualquier momento El INVERSIONISTA exime expresamente a SAMA S A F I S A de toda responsabilidad por las gestiones que realizare a solicitud de cualquiera de las personas autorizadas, siempre y cuando se encuentre consignado en el registro que dichas personas tengan facultades suficientes para solicitarlo así

**VIGÉSIMO: Forma de Pago** Deseo que los dividendos producidos por el o los Fondos de Inversión en que participo, cuando proceda sean:
A-reinvertidos ( )        B- pagados con cheque ( )        C- Depositados en Cuenta Bancaria vía SINPE ( )

**VIGÉSIMO PRIMERO: Vigencia** Este Contrato se mantendrá vigente por todo el plazo de duración del o de los fondos en que el INVERSIONISTA participa o hasta el momento en que el INVERSIONISTA cancele su participación en la totalidad de los fondos en que participa

En fe de lo anterior firmamos en la ciudad de San José a los _____ días del mes de _____ del año _____

Declaro que en esta fecha he recibido, leído y entendido el Prospecto de los Fondos de Inversión administrados por SAMA S A F I S A

Nombre INVERSIONISTA: _Ralph Crum_

Cédula Identidad: _AN9043866_ , o Cédula Jurídica: _____

Representante Legal: _____

Henry Zamora Castro
Representante Legal
SAMA S A F I

Domicilio Contractual: _____

Firma: _[signature]_



## CONTRATO DE CUENTA DE INVERSIÓN CON OPCIÓN DE CUENTA MARGEN

Entre nosotros:

| PERSONA JURIDICA: Nombre_____, cédula jurídica número_____, representada para este acto por_____, cédula de identidad número_____. |

| PERSONA FÍSICA: Nombre Ralph Lyle Crum , documento de identidad número ᛋ 207041608 , estado civil _____, dirección _____. |

en adelante denominado para los efectos de este contrato "EL CLIENTE" y Servicios Bursátiles Internacionales, Sociedad Anónima, en adelante denominada para los efectos de este contrato "SBI", compañía constituida y domiciliada en Panamá y representada para este acto por Eduardo A Díaz S, quien es ciudadano panameño, mayor, casado, ejecutivo, con domicilio en la ciudad de Panamá, Panamá, con cédula de identidad personal número ocho-trescientos cuarenta y ocho-ciento veintiséis (8-348-126), suscribimos el presente contrato bajo cuyas cláusulas se regirá la Cuenta de Inversión con Opción de Cuenta Margen, denominada en US dólares, moneda de curso legal de los Estados Unidos de América u otras monedas

PRIMERA De las Operaciones de Cuenta de Inversión: SBI prestará el servicio de asesoría al cliente en materia de inversiones y operaciones bursátiles y colocará sus fondos en el mercado internacional de acuerdo con las instrucciones que aquéllos le señalen, colocación de fondos que será por cuenta y riesgo del cliente Para los efectos indicados, SBI suministrará al cliente la información a su alcance, obtenida de fuentes que considera confiables, pero cuyos alcances SBI no garantiza, sobre los valores y emisores a invertir, que le permita obtener bases razonables para tomar las decisiones de inversión acordes con los objetivos y necesidades del mismo Los precios o las comisiones que para este fin SBI cobre al cliente, estarán implícitos en la orden de compra del cliente, por lo que éste se obliga a firmar en cada caso, la respectiva orden de transacción En caso de que el cliente no firme la orden de transacción, expresamente acepta la aplicación de las condiciones señaladas en la cláusula décimo quinta de este contrato Para efectos de la confirmación de la orden de transacción por parte del cliente, también se aplicará lo indicado en el estado de cuenta, en el sentido de que el cliente deberá revisar y verificar la exactitud de sus operaciones, y si en los primeros quince días del mes, SBI no recibe observaciones de su parte, considerará que el contenido es de la total aceptación del cliente.

SEGUNDA De las facultades otorgadas por el cliente: Se entiende que para la ejecución de operaciones objeto de este contrato, el cliente confiere a SBI las siguientes facultades:

1 Invertir en nombre propio y por cuenta del cliente, en valores o instrumentos estructurados escogidos por el cliente, los dineros entregados para tales efectos
2 Cobrar dividendos, intereses, amortizaciones e inversiones
3 Enajenar valores recibidos, adquiridos y reinvertir el producto de dicha enajenación
4 Reinvertir dividendos, intereses y amortizaciones

TERCERA De las Operaciones de Cuenta Margen: Asimismo, El Cliente podrá solicitar a SBI que gestione operaciones de Cuenta Margen sobre su portafolio de inversiones, que para efectos de este contrato las partes las definen como aquellas mediante las cuales se efectúa una operación de financiamiento a El Cliente con la garantía de los títulos valores que conforman su portafolio de inversiones, bajo las condiciones de plazo y de tasa de interés que se convenga al momento de formalizar la operación En virtud de la operación de financiamiento descrita, El Cliente deviene en deudor del



proveedor de los fondos, quien recibirá, a través de SBI, plenamente autorizada por El Cliente para este efecto, la totalidad de los valores que integran la cartera o portafolio de inversiones de El Cliente como garantía del crédito  SBI enviará a El Cliente, en forma mensual y por el medio que considere más adecuado, estados de cuenta con la información pertinente

**CUARTA. De la responsabilidad:** SBI responderá únicamente ante El Cliente de las actuaciones dolosas de sus funcionarios, pero en ningún caso, garantizarán la bondad o rendimientos de los títulos valores adquiridos en virtud de las operaciones descritas y que constituyen el objeto del presente contrato, ni por aquellos valores cuyos emisores entren en cesaciones de pagos o quiebra  Estarán obligadas a emitir comunicación al cliente, de cualquier hecho relevante que afecte las inversiones, a la mayor brevedad posible una vez que tenga conocimiento de lo ocurrido, estando de igual manera el cliente obligado a girar instrucciones a seguir  De igual manera, se obligan a comprar y vender los valores que el cliente señale, en Instituciones Financieras  En todo caso, SBI podrá cobrar al cliente una comisión por los servicios de custodia de títulos, cuyo monto deberá comunicar con al menos treinta días naturales de anticipación

El Cliente de manera expresa reconoce que por la naturaleza de las inversiones en el mercado de valores, SBI no asegura rendimientos, estando sus inversiones sujetas a ganancias o pérdidas debido a fluctuaciones en el mercado, y se da por enterado, que las operaciones objeto de este contrato, se realizan bajo su exclusiva responsabilidad y sin la intervención de entes supervisores o fiscalizadores de las actividades bursátiles, reiterando su decisión de realizar inversiones en títulos extranjeros que pueden estar inscritos en los registros de valores nacionales o internacionales  El cliente expresamente reconoce y acepta que SBI mantiene relaciones de negocios con diferentes operadores del mercado internacional, las cuales son totalmente independientes de la relación del cliente con SBI  que se rige por el presente contrato  Por ello, queda totalmente claro para las partes que en ningún momento el cliente tendrá una relación comercial con los operadores internacionales con los cuales SBI tiene relaciones de negocios

**QUINTA. De la cuenta margen:** EL CLIENTE podrá solicitar directamente a SBI  operaciones de Cuenta Margen por una proporción del valor de mercado de los títulos que conforman el portafolio de inversiones, a nombre y por cuenta de El CLIENTE a la fecha de solicitud de esa operación  SBI tiene establecidos para estos efectos los siguientes porcentajes: hasta un máximo del 75% del valor de mercado de las inversiones en títulos del Gobierno de Estados Unidos de América; hasta un máximo del 65% del valor de mercado de las inversiones en bonos corporativos y hasta un máximo del 50% del valor de mercado de las inversiones en acciones  Las proporciones señaladas podrán ser modificadas a discreción y por parte de SBI  SBI  no estará obligada a aceptar operaciones de cuenta margen que le solicite El Cliente, toda vez que la misma constituye una opción o variable del presente contrato, operable únicamente a voluntad de ellas  De igual manera, SBI  se reserva el derecho de aceptar o no como garantía de operaciones de cuenta margen, determinados valores de la cartera de inversión de El Cliente

**SEXTA. De la disminución de la cobertura en operaciones de cuenta margen:** En el evento de que por condiciones imperantes en el mercado o por cualquier otra causa, previsible o no, la cartera de inversión de EL CLIENTE perdiere o disminuyere su valor real de mercado, de manera que disminuya la cobertura de los títulos valores sujetos a operaciones de Cuenta Margen con respecto a los porcentajes señalados en la CLAUSULA ANTERIOR, SBI procederá a notificarle esta circunstancia, conforme con lo dispuesto en la cláusula décimo  sétima de este contrato, y aquél dispondrá de un día hábil para ofrecer garantías adicionales mediante la aportación en valores de comercio de inmediata redención y aceptables por SBI o la aportación de dinero en efectivo, por el monto del demérito sufrido  Si tal situación no se produce a satisfacción en el término indicado, SBI queda facultada para dar por vencido el plazo de la operación de Cuenta Margen y liquidar las inversiones, todo conforme con las facultades otorgadas por EL CLIENTE de repetida mención en este contrato  Si el valor de liquidación de tales inversiones es menor al valor de la operación de Cuenta Margen, EL CLIENTE deberá cubrir el faltante respectivo  En caso de que estos títulos valores no se puedan liquidar en el mercado, EL CLIENTE estará obligado a cancelar el monto adeudado de la Cuenta Margen



SETIMA  Del alcance de las operaciones de cuenta margen: SBI y EL CLIENTE acordarán los términos que se aplicarán en cada operación de Cuenta Margen que se efectúe, en especial, la garantía adicional a aportar si se requiriera, los costos y los intereses, así como cualesquiera otros gastos

OCTAVA  Del vencimiento de la operación de cuenta margen:  La fecha de vencimiento de la operación de Cuenta Margen será mensual   En caso de que la cartera venza parcialmente antes de la fecha de vencimiento de la operación de Cuenta Margen, EL CLIENTE autoriza a SBI para que, con esos recursos, se cancele la operación de Cuenta Margen o parte de ella o, en caso de que EL CLIENTE prefiera continuar con una operación de Cuenta Margen, SBI adquiera para la cuenta de EL CLIENTE nuevos títulos o inversiones a satisfacción de SBI por los montos correspondientes

NOVENA  Del vencimiento anticipado y de la renovación de la operación de cuenta margen: Toda operación de Cuenta Margen tendrá su vencimiento  según lo indicado en la cláusula anterior, siempre y cuando la cartera de inversión que la garantiza, no perdiere o disminuyere su valor real de mercado, de manera que disminuya la cobertura con respecto a los porcentajes señalados en la cláusula  quinta, circunstancia que dará por vencida anticipadamente la operación de Cuenta Margen, dando paso al procedimiento que se establece en la cláusula  sexta de este contrato El presente contrato de cuenta margen se renovará automáticamente, si las partes no convienen lo contrario, mediante comunicación que se hará conforme con lo pactado en la cláusula DECIMO SETIMA de este contrato, bajo las condiciones financieras que prevalezcan en el mercado por el monto de su principal más intereses pendientes de pago, por períodos sucesivos de un mes, considerando las condiciones de este contrato La renovación por el nuevo monto será posible siempre y cuando se cumplan las siguientes condiciones:

1.- Que el valor de mercado de los títulos valores sujetos a las operaciones de Cuenta Margen no hayan disminuido, de manera tal que se afecte su función de garantes de la misma, conforme a los parámetros o límites de financiamiento establecidos por SBI en la cláusula  quinta de este contrato

2- Que exista disponibilidad de recursos por parte de los proveedores de fondos.

Es entendido que EL CLIENTE podrá solicitar anticipadamente la redención de sus inversiones, lo que podría tener lugar de conformidad con los términos y condiciones particulares en que haya sido pactada su inversión  En este momento y si no existiere razón legal o de otra naturaleza que lo impidiere, SBI gestionará la redención anticipada a favor de EL CLIENTE según corresponda, pero éste deberá cancelar de inmediato el total de cualquier adeudo en favor de SBI Por lo demás, SBI estará autorizada para retener directamente recursos necesarios para la cancelación de operaciones de Cuenta Margen, intereses y costos.

DECIMA  De la liquidación de la operación de cuenta margen: En caso de que la operación de Cuenta Margen no sea renovada, EL CLIENTE entiende y acepta que deberá realizar el pago total que corresponda y que comprende principal, intereses, y costos a SBI el mismo día en que la obligación vence Si ese día fuera inhábil, lo deberá efectuar el día hábil siguiente Si el día hábil inmediato posterior al vencimiento de la obligación de Cuenta Margen EL CLIENTE no ha procedido al pago que le corresponde, EL CLIENTE deja facultado en este contrato a SBI para que proceda automáticamente a liquidar las inversiones en valores negociables sujetas a operaciones de Cuenta Margen y/o ejecutar las garantías adicionales que pudieran haberse otorgado, hasta satisfacer el pago

El CLIENTE aceptará como satisfactorios en tal caso, los valores de mercado que SBI asigne a las inversiones en valores que requieran ser liquidadas, los cuales son valores "bid", suministrados por la entidad financiera con la que SBI realice la transacción que corresponde También entiende y acepta EL CLIENTE, que SBI, directamente y de ser ello necesario, realizará gestiones adicionales, incluso de naturaleza legal, si por alguna circunstancia del mercado resultare que el valor de los títulos sujetos a la operación de Cuenta Margen es insuficiente para sufragar la cancelación del total de la operación de Cuenta Margen

DECIMA PRIMERA  De la imputación de pagos en la cuenta margen: De conformidad con lo dispuesto en la cláusula anterior, El CLIENTE expresamente autoriza a SBI para que las inversiones que están sujetas a operaciones de Cuenta Margen, sean primeramente aplicadas a la cancelación del pago de obligaciones de Cuenta Margen constituidas al amparo de este contrato, así como al pago de los intereses,



costos y otros gastos relacionados De resultar un remanente, previa cancelación del principal y accesorios de la operación de Cuenta Margen, se utilizará de acuerdo con las instrucciones del CLIENTE En caso de contarse con cobertura suficiente, SBI, a solicitud de EL CLIENTE, podrá girar a éste los pagos de amortización e intereses generados por los títulos sujetos a la operación de Cuenta Margen, manteniendo los saldos de las operaciones de Cuenta Margen existentes y las capitalizaciones correspondientes

**DECIMA SEGUNDA** De la sustitución de valores sujetos a cuenta margen: En caso de que SBI requiera la sustitución de títulos sujetos a operaciones de Cuenta Margen, se deberá liquidar la operación de Cuenta Margen y constituir una nueva operación de Cuenta Margen, bajo las condiciones vigentes al momento de realizarse la nueva operación

**DECIMA TERCERA** Del registro de operaciones de cuenta margen y facultades otorgadas por el cliente: EL CLIENTE conviene expresamente en que:

a) SBI anotará en sus registros operativos y contables de la cuenta, las observaciones necesarias para indicar que la totalidad de la cartera de inversiones de EL CLIENTE, se encuentra garantizando las operaciones de Cuenta Margen

b) La cartera de EL CLIENTE, en virtud de la anotación referida y mientras esté vigente, no podrá ser traspasada, cedida, afectada, gravada o en cualquier forma enajenada en favor de un tercero o adicionalmente de SBI

c) El monto total de la inversión de EL CLIENTE en SBI no podrá ser reducido total o parcialmente mientras se encuentre vigente la anotación indicada, a no ser que SBI expresamente convenga en autorizarlo

d) La inversión de EL CLIENTE no podrá ser modificada en su destino o naturaleza, en particular en cuanto a las características de moneda en que está representada y el tipo de títulos que la integran, ni se producirán modificaciones en sus condiciones que puedan representar riesgo no previsible, sin que tales cambios hayan sido acordados con SBI

e) EL CLIENTE, en forma irrevocable, autoriza a SBI a disponer de recursos de su cuenta de inversión, por el monto que corresponda al total de la operación de su Cuenta Margen con SBI, en el momento en que la operación resulte vencida y no pagada A todos los efectos, se entiende que tal disposición de recursos podría requerir de la venta de las inversiones propiedad de EL CLIENTE

f) Una vez efectuada la transferencia de recursos de la inversión de EL CLIENTE a favor de SBI, según lo consignado en el literal anterior, se tendrá por cancelada la anotación a que alude el primer literal de esta cláusula y, en consecuencia, por expiradas las limitaciones de disponibilidad señaladas en este contrato.

**DECIMA CUARTA** De los medios de pago: Los pagos totales o parciales de EL CLIENTE realizados con instrumentos de crédito (cheques), quedan "congelados" por el tiempo necesario para recibir respuesta del cobro a satisfacción de ese documento; no obstante, la operación surtirá los efectos de inmediato El congelamiento significa que en ese período los títulos no se liberarán, por lo que no se podrá hacer efectiva su venta, ni sus traspasos, ni podrán ser dados en garantía para préstamos a terceros ni a SBI

**DECIMO QUINTA** Del giro de instrucciones en las operaciones objeto de este contrato: El CLIENTE podrá girar instrucciones, que a la vez serán recibidas por SBI para solicitar inversiones, transacciones, cambios y liquidaciones parciales o totales del portafolio de inversiones Tratándose de portafolios de inversión sujetos o garantes de operaciones de cuenta margen, toda orden girada por el cliente, quedará sujeta a la aprobación expresa por parte de SBI SBI hará su mejor esfuerzo por ejecutar las instrucciones de EL CLIENTE Expresamente acepta EL CLIENTE que todas las instrucciones y solicitudes que en la ejecución del presente contrato gire vía telefónica serán objeto de grabación y debidamente archivadas y custodiadas Asimismo, consiente EL CLIENTE que dichas grabaciones o las transcripciones que se hagan de las mismas, podrán ser utilizadas como medio probatorio en cualquier procedimiento judicial o arbitral a que se vea sometido el presente contrato

**DECIMO SEXTA** De la Jurisdicción aplicable: Las partes acuerdan en forma irrevocable que este contrato se regirá por las leyes y la jurisdicción de los Tribunales de la República de Panamá, para exigir



el cumplimiento de las obligaciones de EL CLIENTE Asimismo, las partes acuerdan que cualquier controversia, discrepancia, litigio, disputa, reclamo o diferencia que se origine en la ejecución de este contrato o vinculado en él o a una materia en él contenida, así como respecto de su validez, existencia, aplicabilidad, nulidad, anulabilidad, resolución, rescisión o terminación será resuelto por arbitraje legal o de derecho de conformidad con el Decreto Ley número cinco del ocho de julio de mil novecientos noventa y nueve, Régimen General de Arbitraje de la conciliación y de la mediación de la República de Panamá y las siguientes disposiciones:

a) Las partes aceptan de manera expresa que el laudo arbitral será definitivo y obligatorio, renunciando a interponer cualquier recurso de apelación o cualquier otro recurso impugnatorio contra el laudo arbitral
b) El tribunal arbitral que se constituya estará integrado por tres árbitros juris, nombrados uno por cada parte, quienes, a su vez, designarán un tercero, quien actuará como árbitro presidente para dirigir e impulsar el procedimiento y para dirimir las discordias entre los miembros del Tribunal En caso de no ponerse de acuerdo con la designación de los árbitros, los nombramientos se ajustarán a lo que dispone la ley mencionada Los árbitros designados no podrán tener vinculación o interés alguno con las partes de este contrato
c) En caso de que fuera necesario designar a una autoridad nominadora, de conformidad con la ley antes mencionada, las partes designan a la Cámara de Comercio de Panamá
d) El lugar de arbitraje será la ciudad de Panamá, República de Panamá
e) El arbitraje se llevará a cabo en castellano Todos los documentos que se presenten deberán estar traducidos a este idioma
f) La materia objeto de controversia se determinará con base en los alegatos que contengan la demanda y su contestación, así como las reconvenciones, modificaciones, enmiendas y recursos posteriores En caso de que el laudo contenga asuntos no reclamados por las partes, éste no será de aplicación en tales temas, pero será válido en lo que respecta a todos aquellos aspectos que resuelvan los puntos controvertidos
g) En caso de discrepancia entre las partes sobre la materia objeto de la controversia, corresponderá al tribunal arbitral señalarla
h) Las partes acuerdan que el laudo arbitral dictado, de acuerdo con lo pactado en esta cláusula, podrá ser ejecutado en los tribunales de cualquier jurisdicción
i) Los gastos del arbitraje serán de cuenta de la parte que señale el tribunal arbitral
j) El laudo arbitral será expedido en el plazo máximo de seis meses, a partir de la fecha de inicio del arbitraje
k) Al efecto de tal arbitraje se aplicarán las leyes de la República de Panamá, a la cual se someten las partes

**DECIMO SEPTIMA** De las comunicaciones entre las partes: Para recibir cualquier comunicado, aviso o notificación de los previstos en el presente contrato, las partes establecen que se hará en la oficina de la señora «Representante» Asume el cliente la obligación de dar aviso inmediato ante la presencia de cualquier acontecimiento o hecho relevante en relación al medio de notificación señalado En todo caso, bastará que SBI afirme haber realizado la gestión de aviso o notificación, mediante el medio o lugar señalado, para tenerla por efectivamente practicada, para que se tenga por facultada a operar las acciones que requieran previa comunicación, aviso o notificación a EL CLIENTE

**DECIMO OCTAVA** EL CLIENTE otorga Poder Especial, de conformidad con la normativa panameña, a las siguientes personas autorizadas para girar instrucciones, solicitar y realizar desembolsos conforme al contrato de inversión, así como en operaciones de Cuenta Margen de la cuenta aquí establecida

**PERSONAS AUTORIZADAS**

Nombre:_____ Firma:_____
Documento de Identidad número: _____



Nombre:_____ Firma:_____
Documento de Identidad número: _____

Nombre:_____ Firma:_____
Documento de Identidad número: _____

Nombre:_____ Firma:_____
Documento de Identidad número: _____

INVERSIONISTA O REPRESENTANTE LEGAL

Nombre:_____ Firma: _/s/ signature_____
Documento de Identidad número: _____

Este contrato se suscribe a los _____ días del mes de _____ del año_____

---

Eduardo A. Díaz S
**SERVICIOS BURSÁTILES**
**INTERNACIONALES (SBI)**



### Anexo 1
### CONSIDERACIONES IMPORTANTES SOBRE LAS CUENTAS DE INVERSION EN LAS QUE FIGURAN MÁS DE UN PROPIETARIO CON LA APLICACIÓN DE LAS EXPRESIONES "y"; "o"; "y/o"

**A.-** **Efectos de la utilización de la expresión "y"**

La expresión "y" enlaza o junta dos o más cosas. Tratándose de cuenta-habientes, indica copropiedad, produciendo los siguientes efectos:

A.1.- Para todo tipo de trámite, actuación, diligencia y negocio, se requiere, sin excepción alguna, la firma de todas las personas que aparecen como copropietarios de la cuenta.

A.2.- Ante situaciones como el embargo de la cuenta, declaratoria de quiebra o de muerte, declaración de ausencia, presunción de muerte e interdicción de uno de los cuenta-habientes, sólo se afecta la parte alícuota que le corresponde, o sea, la suma o valores correspondientes, en función de una idea de proporción, siendo ineludible para la empresa administradora de la cuenta de inversión suspender el trámite de toda gestión o solicitud, hasta que el copropietario no afectado por estos eventos, reivindique sus bienes ante <u>la autoridad competente</u>

**B.-** **Efectos de la utilización de la expresión "o"**

La expresión "o" es disyuntiva o alternativa, permite optar entre dos cosas. Tratándose de cuenta-habientes, da a entender que cada una de las personas a cuyo nombre está la cuenta, es dueña de la totalidad de la cuenta y en consecuencia:

B.1- La firma de cualquiera de ellas es suficiente para todo tipo de actuación, diligencia, negocio.

B.2- En caso de embargo de la cuenta, declaratoria de quiebra, o casos de muerte, declaración de ausencia, presunción de muerte e interdicción de uno de la cuenta-habientes, afecta la totalidad de la cuenta, siendo ineludible para la empresa administradora de la cuenta de inversión suspender en forma inmediata el trámite de toda gestión o solicitud, hasta que las partes reivindiquen sus bienes ante la <u>autoridad competente.</u>

**C.-** **Efectos de la utilización de la expresión "y/o"**

No se recomienda el uso de la expresión "y/o", pues no está regulado su uso para la apertura y administración de cuentas de inversión

_____       _____
**SERVICIOS BURSÁTILES**                    **EL CLIENTE**
**INTERNACIONALES (SBI)**

Case 08-20297-rlj7 Doc 58-2 Filed 11/06/08 Entered 11/06/08 17:55:10 Desc
Exhibit Group SAMA Investment Documents Page 13 of 19

29



CONTRATO GENERAL DE COMISION PARA LA REALIZACIÓN
DE OPERACIONES BURSATILES

A TRAVES DE INVERSIONES SAMA, S.A PUESTO DE BOLSA

Celebrado en San José, Costa Rica, el día _____ INVERSIONES SAMA, S A. PUESTO DE BOLSA, cédula de persona jurídica número tres-ciento uno-cero treinta y dos mil seiscientos treinta y nueve, representado en este acto Melvin Murillo Poltronieri, mayor, casado una vez, vecino de San Pablo Heredia, portador de la cédula de identidad número uno-ocho nueve tres-seis cinco cero, con facultades suficientes para este acto en adelante denominado " EL PUESTO" y " EL CLIENTE", identificado al final de este documento en la sección Octava con facultades suficientes para este acto Ambas partes denominadas en conjunto como las "Partes"

POR TANTO

Las Partes acordamos celebrar el presente CONTRATO GENERAL DE COMISION PARA LA REALIZACION DE OPERACIONES BURSÁTILES, el cual se regirá por las disposiciones aplicables de Ley Reguladora del Mercado de Valores, el Reglamento General para la Negociación de Titulos Valores de la Bolsa Nacional de Valores S. A., las disposiciones de la Superintendencia General de Valores (en adelante identificado como SUGEVAL), de la Bolsa Nacional de Valores S.A (en adelante denominado como La Bolsa), el Consejo Nacional de Supervisión del Sistema Financiero, y supletoriamente el Código de Comercio y el Código Civil en lo que le sean aplicables, y por las siguientes CLÁUSULAS:

SECCIÓN PRIMERA

Objeto del contrato, plazo, comisiones.
1.1 Otorgamiento del poder de actuación. EL CLIENTE contrata los servicios del PUESTO, y le otorga poder suficiente para que por su cuenta realice las operaciones bursátiles y servicios indicados en el presente contrato El PUESTO acepta el presente mandato como comisionista en los términos y condiciones que se indican en el presente contrato
1.2 Plazo del presente contrato El plazo del presente contrato es por tiempo indefinido siempre y cuando la cuenta de inversión de EL CLIENTE se encuentre con movimientos regulares y periódicos No obstante, cualquiera de las partes podrá dar por terminado el presente contrato en cualquier momento, para lo cual deberá dar aviso por escrito a la otra con al menos un mes de anticipación En caso de que el CLIENTE mantenga operaciones o valores que por su naturaleza o plazo requieran del cumplimiento de procedimientos especiales de acuerdo con la normativa vigente dará al PUESTO el plazo necesario para liquidar dichas operaciones o valores.
1.3 Comisiones. El CLIENTE pagará al PUESTO las comisiones que se pacten en cada oportunidad según la modalidad de operación o servicio realizado el cual se refleja en las órdenes de transacción

SECCIÓN SEGUNDA

Operaciones y servicios contratados por el CLIENTE, medios y condiciones

2 1 Servicios contratados. Por medio de este contrato EL CLIENTE autoriza voluntaria y expresamente al PUESTO a realizar por su cuenta las siguientes operaciones y servicios bursátiles: Compra y Venta de Valores en Costa Rica; Compra y Venta de Valores en el Extranjero; Fideicomisos de Garantía, de Administración o Testamentarios de Valores; Futuros; Administración Individual de Carteras; Préstamo de Valores; Opciones; Reporto Tripartito; Operaciones Cambiarias, Asesoría en Inversión Registro de custodia de valores y gestión de transferencias electrónicas de dinero

El Reporto Tripartito se define como las operaciones mediante las cuales el valor subyacente es traspasado por el reportado en la operación de contado al Fideicomiso de Garantías administrado por la BOLSA durante el transcurso del plazo de la operación bajo el compromiso de comprarlo de nuevo en un plazo determinado contra el reembolso del precio al reportador, que puede ser aumentado o disminuido en la medida convenida, para Futuros podemos entender como contratos para la venta y entrega de mercancías en algún momento futuro, hechos bajo el entendido las mercancías no se recibirán inmediatamente, y finalmente opciones se determinan como el privilegio de comprar o vender, recibir o entregar propiedades, dado de acuerdo con las condiciones establecidas a cambio de determinado precio Este privilegio puede ejercerse o no a discreción de su poseedor

EL CLIENTE acepta que EL PUESTO formalice operaciones a su nombre cuando se estén realizando operaciones por cuenta propia según lo establecido en el Reglamento de Operaciones por Cuenta Propia emitido por la SUGEVAL. En este caso, EL PUESTO tendrá la obligación de informar al CLIENTE en las respectivas boletas de transacción las operaciones por cuenta propia y cumplir con los deberes de información respectivos

2 2 De la custodia de los valores. EL PUESTO presta los servicios básicos de custodia Categoría B tanto para carteras individuales como fondos de inversión y cumple con los requisitos generales de funcionamiento y las demás condiciones para custodia de carteras colectivas que establece el Reglamento de Custodia

Los títulos o valores objeto de negociación o que formen parte o respalden las carteras de inversión individuales o mancomunadas de EL CLIENTE, estarán depositadas en una entidad de Depósito o de Custodia costarricenses o extranjeras, en su caso, debidamente inscrita ante la Superintendencia General de Valores Por los servicios de Depósito o Custodia y su Administración EL PUESTO podrá transferir a EL CLIENTE las sumas que le sean facultadas por las entidades correspondientes así como las sumas que sean establecidas por el propio puesto de bolsa para brindar estos servicios previa notificación al cliente de las tarifas aplicables

2 3 De las cuentas de dinero El Puesto creará para el CLIENTE, cuentas de registro para la tenencia de los dineros producto de las operaciones a realizar en el puesto de bolsa De esta manera el CLIENTE autoriza al PUESTO a tomar de los recursos depositados en estas cuentas, lo requerido para la cancelación del importe generado de las diferentes operaciones establecidas en este contrato y solicitadas por el cliente, así como para el pago de las comisiones correspondientes al PUESTO

2 3 Firmas autorizadas. Se entenderá por representantes autorizados del CLIENTE las personas que estén debidamente facultadas para realizar operaciones a nombre y por cuenta del CLIENTE, según los registros del PUESTO o quienes se presenten con poderes suficientes para tales actos

De igual forma EL CLIENTE podrá autorizar a personas para que procedan al retiro o recepción de documentación emitida por EL PUESTO y el retiro de valores propiedad del CLIENTE EL PUESTO no es responsable por las actuaciones de las personas autorizadas por el CLIENTE Salvo comunicación en contrario, las personas autorizadas por EL CLIENTE continuarán en ejercicio de los derechos conferidos por EL CLIENTE y se releva al PUESTO de toda responsabilidad en este sentido

El PUESTO reconocerá como autorizadas a las personas que EL CLIENTE establece en el Formulario de 'Información General del Cliente y tendrán facultades para solicitar a EL PUESTO las operaciones y servicios estipulados en la Sección Segunda cláusula 2 1 de dicho formulario



2.4 **En el caso de personas jurídicas** EL CLIENTE debe mantener informado a EL PUESTO, mediante certificaciones registrales o notariales de los nombres, calidades y puestos que desempeñan cada una de las personas que ostenten la representación legal de la empresa y tengan facultades suficientes para girar instrucciones; además debe suministrar y actualizar la información que EL PUESTO y la BOLSA considere relevante

SECCIÓN TERCERA

Obligaciones y declaraciones del CLIENTE

3.1 **Obligaciones del Cliente** El CLIENTE se obliga a pagar el precio de la compra o a entregar el título valor objeto de la venta de previo a la realización de la operación, y a cumplir con las garantías y llamadas de margen exigidas por la Bolsa y las que el PUESTO requiera, según la modalidad de operaciones a plazo, reportos, futuros u opciones, según lo pactado en el presente contrato en los plazos y condiciones así exigidos por la Bolsa, la Superintendencia General de Valores o el PUESTO El CLIENTE asume la responsabilidad por la autenticidad y legitimidad de los valores entregados al PUESTO para su custodia o negociación, en los términos del presente contrato

3.2 **Suministro de información.** El CLIENTE garantiza al PUESTO que la información que le ha suministrado para la apertura de su cuenta con el PUESTO es verdadera, y lo releva de cualquier responsabilidad en relación con el suministro de datos incorrectos o falsos Asimismo, que la información financiera que el CLIENTE ha revelado al PUESTO, es veraz y suficiente para la gestión de los servicios contratados al amparo del presente contrato. El cliente reconoce y acepta que la solicitud de actualización de la información brindada, así como cualquier solicitud en aras del cumplimiento de la política de Conozca a su Cliente establecido por las entidades reguladoras del sector financiero, con el fin de cumplir con la Ley 8204, Ley sobre Estupefacientes, Sustancias Psicotrópicas, Drogas de uso no autorizado, Legitimación de Capitales y Actividades Conexas, será de cumplimiento obligatorio, pudiendo EL PUESTO actuar de manera tal que asegure la realización de las operaciones especificadas en este contrato, a merced del cumplimiento en la entrega de información por parte del cliente Por lo tanto EL CLIENTE asume la obligación de presentar los documentos necesarios o requeridos para respaldar la información brindada

3.3 **Declaraciones del cliente** El CLIENTE declara reconoce y acepta lo siguiente para los efectos de este contrato:

a) Que ninguna de las operaciones que se realizan al amparo de este contrato, es garantizada en mondo alguno por el puesto Todas las operaciones conllevan la asunción del riesgo económico derivado de la operación bursátil, entendido como la posibilidad de ocurrencia de alguna de las siguientes situaciones, sin que sea una lista taxativa: variaciones en los precios de los valores, pérdidas o ganancias de capital, cambios en las tasas de interés, variaciones en el tipo de cambio, cesación parcial o total de pagos del emisor, administración y reorganización con intervención judicial, insolvencia y quiebra del emisor, intervención administrativa por parte de SUGEF, SUGEVAI u otra entidad reguladora costarricense o extranjera, según la nacionalidad del emisor, modificaciones impositivas producto de cambios en la legislación y cualquier otro hecho o situación que pueda tener impacto o efecto en las condiciones de la negociación que pueden provocar inclusive la posible pérdida del principal invertido

b) El CLIENTE declara conocer que ha sido informado por el PUESTO de la normativa aplicable usualmente a los servicios brindados al amparo de este contrato razón por la que firma al final de este contrato
c) Conoce y acepta que EL PUESTO realiza las operaciones a nombre propio y por cuenta del CLIENTE, lo cual significa que EL PUESTO opera única y exclusivamente como un intermediario en las operaciones del CLIENTE, y que las implicaciones económicas recaen directamente en el patrimonio del CLIENTE
d) Que reconoce y acepta el derecho que tiene EL PUESTO de hacerse el cobro de las sumas que éste pague en su representación, como de las comisiones que acuerden verbalmente o por escrito o se encuentren vigentes por la realización de cada operación.
e) Que todas y cada una de las operaciones realizadas bajo los términos de este contrato serán ejecutadas a su solicitud a través de las órdenes de transacción respectivas EL CLIENTE autoriza al PUESTO a recibir u ejecutar las órdenes de transacción que sean emitidas por el medio de comunicación detallado en la sección Sexta de este contrato siempre y cuando éstas hayan sido emitidas debidamente por el CLIENTE o por su representante autorizado En el caso de órdenes por la vía telefónica EL CLIENTE autoriza expresamente para que las mismas sean grabadas para efectos probatorios y se compromete a remitir al PUESTO la respectiva orden por escrito En el caso de órdenes giradas por teléfono que sean grabadas, este contrato se ajustará a lo que oportunamente disponga la Superintendencia General de Valores en esta materia y el derecho de prioridad de EL CLIENTE se inicia a partir de que se da la llamada telefónica, por lo que el puesto tiene obligación, a partir de ese momento de hacer efectiva la orden del CLIENTE siempre y cuando las condiciones de mercado se lo permitan

f) En el caso de órdenes escritas o por medio de fax o e-mail el derecho de prioridad del CLIENTE se inicia a partir del efectivo recibo de la orden por parte del PUESTO, por lo que este último tiene la obligación a partir de ese momento de hacer efectiva la orden del CLIENTE, siempre y cuando las condiciones de mercado lo permitan Es constancia de órdenes emitidas por teléfono, la firma del CLIENTE en la boleta de confirmaciones de la transacción En el caso de la utilización del fax o correo electrónico como medio para la emisión de órdenes de transacción, EL CLIENTE comprobará el envío de la orden mediante la boleta de confirmación que emite el fax o en el caso de correo electrónico, la confirmación de recibo de parte del PUESTO En aquellos casos en los que EL CLIENTE omita establecer en la orden de transacción las condiciones en que debe realizarse la operación solicitada y siempre que se haya indicado claramente el tipo de operación que se encomienda realizar al PUESTO, se entenderá que el PUESTO queda facultado para actuar de manera discrecional en relación con esas condiciones y EL CLIENTE las aceptará En ese caso EL CLIENTE releva de toda responsabilidad Al PUESTO en el tanto se haya actuado de forma diligente de acuerdo con los usos y prácticas del mercado

3.4 **Obligación en cuanto a suministro de garantías y márgenes** El CLIENTE acepta conocer su obligación en cuanto al suministro de garantías y márgenes para las operaciones a plazo, reportos, préstamo de valores, futuros y opciones, entre otros, exigidos por la Ley y el ordenamiento reglamentario vigente dictado por el Consejo Nacional de Supervisión del Sistema Financiero, la Superintendencia General de Valores y la Bolsa Nacional de Valores En caso de que el PUESTO sea requerido por alguna de estas últimas entidades supervisoras, para aumentar las garantías o márgenes por operaciones del CLIENTE, éste autoriza al PUESTO para que de su cuenta de inversiones liquide o traslade los montos correspondientes, o entregue los valores necesarios a la BOLSA Asimismo, entregará al PUESTO las garantías que éste le exija cuando por el riesgo de las operaciones, deban estar cubiertas las posiciones de compra o venta

SECCIÓN CUARTA

Obligaciones del Puesto de Bolsa

4.1 **Obligaciones generales del PUESTO.** EL PUESTO sin perjuicio de las demás responsabilidades civiles, administrativas o penales que el ordenamiento jurídico puede establecerle expresamente, en el ejercicio de sus funciones, asume las siguientes responsabilidades específicas:

a) Suministro de información y asesoría: EL PUESTO deberá brindar toda la información disponible cuando sea relevante para la toma de decisiones de inversión y, adicionalmente, deberá asesorar al cliente sobre las diferentes opciones disponibles para que luego, EL CLIENTE realice su propio análisis de la conveniencia o no de la inversión El hecho de que el PUESTO suministre información o únicamente tome una orden, no implica ser una labor de asesoría de parte del PUESTO La información brindada será la que está a disposición para el resto de los participantes de la Bolsa a través de la Superintendencia General de Valores, y no compromete al PUESTO en cuanto a la veracidad de la misma Sin embargo, EL PUESTO deberá realizar su mejor esfuerzo para asesorar a EL CLIENTE, respetando los casos en que EL CLIENTE tome sin oír ni evaluar la asesoría ofrecida Asimismo, EL CLIENTE declara que con la emisión de la orden de

transacción, acepta que lo hace después de haber revisado la información pertinente, hecho el análisis del caso y aceptado los riesgos de la transacción respectiva En el caso particular de las operaciones de recompra EL CLIENTE acepta las condiciones que se reflejan en el Anexo 2 de este contrato

b) Acatamiento de las instrucciones del CLIENTE: El PUESTO se ajustará a las instrucciones del CLIENTE En defecto de instrucciones, el PUESTO queda autorizado para actuar según los usos y costumbres de la Bolsa, actuando con la debida diligencia de un buen padre de familia, como si se tratara de sus propios negocios

c) Prioridad: El PUESTO dará prioridad a las instrucciones DEL CLIENTE cuando estas fueran dadas en condiciones mejores o iguales a las del PUESTO o su grupo de interés económico

d) Secreto bursátil: El PUESTO guardará confidencialidad de la información suministrada por EL CLIENTE, salvo por mandato judicial o de una autoridad gubernamental en el ejercicio de sus facultades legales

e) Asesoría: El servicio de asesoría, será brindado a solicitud del CLIENTE Queda entendido que la Asesoría en inversiones brindada por el PUESTO no garantiza el resultado económico de las inversiones del CLIENTE, y que el PUESTO brinda a asesoría de acuerdo con las reglas de la ciencia, la lógica y los métodos razonables para las recomendaciones dadas al CLIENTE La asesoría del puesto brinda elementos esenciales para la toma de decisiones, pero no exime al CLIENTE de la responsabilidad por el riesgo que asume

4.2 Estados de cuenta El PUESTO entregará al CLIENTE un estado mensual de sus operaciones Este estado será suministrado al CLIENTE por el medio elegido en la cláusula 6.1. Las observaciones u objeciones al estado de cuenta, deberán ser realizadas por el CLIENTE dentro de un plazo de máximo ocho días hábiles de manera escrita Si transcurrido dicho plazo, el CLIENTE no hiciere objeciones u observaciones al estado de cuenta, éste se reputará como válido y señal de aceptación de la información ahí contenida

4.3 Boletas de transacción El PUESTO entregará las boletas de transacción por el medio indicado por el CLIENTE en la cláusula 6.1

EL CLIENTE deberá informar al PUESTO respecto de su aceptación o no de la transacción en el plazo de cuatro días hábiles contados a partir del envío de la boleta de transacción Transcurrido dicho plazo, y si no hubiere objeción de EL CLIENTE, se da por aceptada la transacción y releva de toda responsabilidad al PUESTO si este último comprueba que efectivamente la boleta de transacción se envió, pese a que EL CLIENTE no la haya recibido. En el caso de que dentro del plazo establecido EL CLIENTE manifieste su disconformidad con la realización de una o varias operaciones realizadas por EL PUESTO por cuenta suya y dicho reclamo se fundamente en que la operación u operaciones no han sido autorizadas por EL CLIENTE o se realizaron bajo condiciones diferentes a las ordenadas, EL PUESTO estará facultado para reasignarse la operación u operaciones por cuenta propia, pudiendo, por lo tanto, salir al mercado para negociarlas nuevamente o de lo contrario procede a la ejecución coactiva de la operación o la resolución contractual Bajo ninguna circunstancia el Puesto podrá reasignar la operación u operaciones a otro cliente, sino que únicamente podrá reasignar por cuenta El PUESTO

## SECCIÓN QUINTA

### Disposiciones finales y misceláneas

5.1 Cláusula Arbitral. En caso de diferencias, conflictos o disputas relacionadas con la ejecución, incumplimiento, interpretación, liquidación o cualquier otro aspecto derivado del presente contrato, las partes de conformidad con los artículos cuarenta y uno y cuarenta y tres de la Constitución Política, renuncian en este acto expresamente a la jurisdicción ordinaria y acuerdan resolver el conflicto conforme el siguiente procedimiento: a) compromiso de conciliación: las partes acuerdan acudir en primera instancia al proceso de conciliación establecido en la reglamentación del Centro de Conciliación y Arbitraje de la Cámara de Comercio de Costa Rica designándose como mediador unipersonal a quien por turno corresponda, de la lista que lleva la Dirección del Centro  b) Compromiso arbitral: en caso de que el asunto no sea resuelto en un máximo de dos audiencias de conciliación, o en caso de que no se verifiquen las sesiones por ausencia de alguna de las partes el asunto o controversia será resuelto mediante laudo definitivo e inapelable de conformidad con los reglamentos de Conciliación y Arbitraje del Centro, a cuyas normas las partes se someten en forma incondicional. Queda entendido que tanto la mediación como el arbitraje podrán ser solicitados por el cliente como por el Puesto En caso de que en el momento en que deba resolverse el conflicto, ninguno de los Centros que estén prestando los servicios anteriormente referidos, el conflicto se resolverá mediante un proceso arbitral que se tramitará de conformidad con la Ley sobre Resolución Alternativa de Conflictos y Promoción de la Paz Social, número siete mil setecientos veintisiete

5.2 Ausencia de Dispensas y Derechos Acumulativos Ninguna falta, retraso o ejercicio parcial de las partes en el ejercicio de cualquier derecho bajo este Contrato operará como una dispensa o como impedimento o preclusión en relación con cualquier derecho bajo el mismo Todos los derechos y recursos establecidos en este Contrato o en cualquier otro documento de garantía, son acumulativos y pueden ser ejercitados contemporánea o sucesivamente, y no excluyen cualquier otro derecho o recurso establecido por la ley. Ninguna dispensa tendrá efecto alguno, a no ser que sea ejecutada por escrito y autenticada por la parte dispensante La dispensa de un incumplimiento no operará como dispensa de cualquier otro

5.3 Supervivencia Todas las declaraciones y garantías hechas por las partes en este Contrato o en algún documento emitido en relación con este Contrato sus estipulaciones y compromisos sobrevivirán la ejecución de los mismos, hasta por el plazo de prescripción mercantil o civil según sea el caso

5.4 Beneficiarios En documento que EL PUESTO le suministra a EL CLIENTE, se señalan las condiciones legales que prevalecen para la designación de beneficiarios de cuentas de inversiones

5.5 Modificaciones, Enmiendas y Protocolización:

a) Este Contrato y cualquier otro documento anexo contienen todos los acuerdos entre las partes Todas las anteriores negociaciones, compromisos, estipulaciones, declaraciones y acuerdos, sean estos orales o escritos, en relación con el presente contrato se fusionan aquí, y en caso de contradicción entre unos y otros, prevalecerán para todos los efectos legales las estipulaciones de este Contrato y sus anexos

b) Este Contrato podrá ser modificado o enmendado únicamente mediante otro acuerdo escrito ejecutado por las partes con las mismas solemnidades de este Contrato

c) Cualquiera de las partes podrá protocolizar este Contrato por su cuenta y costo, sin necesidad de comparecencia de la otra parte

5.6 Títulos. Los títulos que se emplean para encabezar cada cláusula de este contrato, se introducen para facilitar su lectura y no deben ser considerados como parte del texto del contrato para interpretar su contenido

Conformes con lo expuesto, firmamos en dos tantos que se reputan como originales en el lugar y fecha indicados



### SECCIÓN SEXTA

Comunicaciones

6.1 **Medios para Comunicaciones** EL CLIENTE acepta que las comunicaciones del PUESTO, en relación con lo establecido en las cláusulas 4.2 y 4.3 de este contrato le sean enviadas por: ( ) Fax    ( ) E-mail    ( ) Correo    ( ) Otro

6.2 **Lugar de Comunicaciones**. El CLIENTE declara que la dirección anotada al final de este apartado como domicilio es correcta, autorizando al PUESTO a confirmar por sus medios la información aquí consignada y acepta que en el evento de que se produzca algún cambio, será obligación del CLIENTE comunicarlo al PUESTO, lo cual deberá hacerse por escrito mediante nota firmada por EL CLIENTE o por el representante legal de la empresa. Salvo comunicación en contrario, el domicilio aquí señalado será el correcto para los efectos del Puesto, por lo que se releva al Puesto de toda responsabilidad en el envío de información si se produjo un cambio en el domicilio y no se le comunicó debidamente.

En caso de que EL CLIENTE no posea una residencia o domicilio social permanente en el país cuando se ausente deberá nombrar un representante en el país con el fin de que reciba la documentación que EL PUESTO le envía en relación con sus operaciones. Si EL CLIENTE incumple esta obligación se releva al PUESTO de las responsabilidades que se le pudieran atribuir por la entrega de la documentación atinente a las operaciones del CLIENTE.

EL CLIENTE, para todos los efectos de la relación comercial que mantiene con EL PUESTO señala como domicilio para recibir notificaciones, comunicaciones o cualquier tipo de información el siguiente:

País: _____ Provincia: _____ Cantón: _____
Distrito: _____ Otras señas: _____

### SECCIÓN SÉTIMA

Asimismo, EL CLIENTE ACEPTA( ) NO ACEPTA( ) de manera expresa facultar al PUESTO para que actúe bajo su discrecionalidad en lo relativo a la administración de sus recursos y acepta las condiciones y características de las operaciones que en uso de este poder de discrecionalidad EL PUESTO realice por su cuenta. En ese sentido lo releva de toda responsabilidad por sus actos en uso de ese poder discrecional, siempre y cuando EL PUESTO o sus funcionarios hayan actuado con la debida diligencia.

### SECCIÓN OCTAVA

Calidades del Cliente

Nombre CLIENTE: **Ralph Crum**

Cédula Identidad: **d09904266 0**    o Cédula Jurídica: _____

Representante Legal: _____

Melvin Murillo Poltronieri
Representante Legal
Inversiones Sama S.A.

Domicilio Contractual: _____

Firma: _____

# SAMA ᴵ TERNACIONAL, G.S. S.A.

No. 27644-1

RECIBO DE DINERO EN DOLARES

(Orden de Transacción)   11:34

| DIA | MES | AÑO |
|---|---|---|
| 29 | 5 | 2008 |

Cuenta de Disponibilidad   10673534   CRUM RALPH LYLE

Recibimos de: CRUM RALPH LYLE   Código Cliente 111272

La suma de: DOSCIENTOS CINCUENTA Y CUATRO MIL NOVECIENTOS DOS CON 04/100   Monto   254,902.04 DOL

Concepto: CK OFFICIAL WACHOVIA # 367753356 CK CITIBANK DELAWARE # 3491340690 PARA INVERSION

### DOCUMENTOS RECIBIDOS

| Tipo | Número | Emisor | Monto | Valores en tránsito |
|---|---|---|---|---|
| CKRE | 36775335 | BICSA | 157,594.21 DOL | * |
| CKRE | 34913406 | BICSA | 97,307.83 DOL | * |

### Asiento

| Cuenta | Debe/Haber | Monto |
|---|---|---|
| 111.01.2.05 | Debe | 254,902.04 |
| 101020020101 | Haber | 254,902.04 |

Hay valores en tránsito por confirmación de fondos por:

**254,902.04 DOL**

*Recibido para ser transferido a Servicios Bursátiles Internacionales, S A, Sociedad Inscrita y con domicilio en ciudad de Panamá por cuenta del Cliente*

Para efectos de la Ley N° 8204 "Ley sobre Estupefacientes, Sustancias Psicotrópicas, Drogas de uso no Autorizado, Legitimación de Capitales y Actividades Conexas", puede ser necesario investigar a los inversionistas y revisar el origen y destino de los fondos

La validez de este recibo queda sujeta al pago incondicional por parte del Banco, cuando se cobren o depositen los valores que éste contiene

P/ SAMA INTERNACIONAL, G S S A
TELEFONO. 296-70-70 FAX:296-7794

FIRMA CLIENTE
Usuario llopes

324770872384

**Prudential Financial**

006000446

*SAMA* (stamp)

3491340690
RALPH CRUM MD
7003 COVENANT LANE
AMARILLO TX 79109

| | |
|---|---|
| PAYMENT DATE: | APR 29 2008 |
| PAYMENT REASON: | DISTRIBUTION |
| NAME: | RALPH CRUM MD |
| PLAN NUMBER: | 006946 |
| ID NUMBER: | 00694623380 |
| CHECK NUMBER: | 3491340690 |
| CHECK AMOUNT: | $97,307.83 |

# CHECK STATEMENT

PLAN NAME: PRUDENTIAL SMARTSOLUTION IRA

Page 1 of 2

| | |
|---|---|
| GROSS PAYMENT | $97,307.83 |
| TOTAL DEDUCTIONS | 0.00 |
| NET PAYMENT | $97,307.83 |
| | |
| NON TAXABLE PORTION OF THE DISBURSEMENT | $0.00 |

If you have any questions, please call your Customer Service Office at (877) 778-2100,
or write to: Prudential Retirement Services, 30 Scranton Office Park, Scranton, PA 18507-6398

Detach before cashing or depositing check. Please retain this check statement for future reference.

