Coleman Young, Esq.
TEMPLETON, SMITHEE, HAYES
 HEINRICH & RUSSELL, L.L.P.
320 S. Polk, Suite 1000
P. O. Box 15010
Amarillo, Texas  79105
(806) 324-0324 – Telephone
(806) 379-8568 – Telecopy

ATTORNEY FOR RANDI L. CRUM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| RALPH LYLE CRUM, § | CASE NO.2-08-20297-RLJ-7 |
| § | |
| DEBTOR. § | |

## RANDI L. CRUM'S BRIEF IN SUPPORT OF HER OBJECTIONS
## TO DEBTOR'S AMENDED CLAIMED EXEMPTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Randi L. Crum, a creditor and party in interest in the above referenced bankruptcy proceeding, and files this her Brief in Support of her Objections to Debtor's Amended Claimed Exemptions.  In support of her objections, Randi Crum would show the Court as follows:

**A.    The Debtor's IRA's Are Not Exempt Under 11 U.S.C. § 541(c)(2).**

1.    The Debtor has claimed as exempt the Group Sama Internacional IRA of $254,902.04; a Fidelity Retirement Account of $38,080.64; a Wachovia SEP-IRA of $79.58; and proceeds of a Fidelity IRA of $11,000.  These exemptions are claimed under 11 U.S.C. §§ 522(d)(12), 522(b)(3)(A) and (C), 522 (b)(4)(B)(i) and (ii)(II), 522(b)(4)(D), 522(d)(10)(E), 29 U.S.C. § 1056(d); *Patterson v. Shumate,* 504 U.S. 753 (1992) (not part of the estate)*,* and *Roussey*

*v. Jacoway,* 161 L.Ed 2d 563 (2004). First, the Debtor has claimed that the IRA's are exempt from all creditors because they are not assets of his bankruptcy estate under 11 U.S.C. § 541(c)(2), the ruling in *Patterson v. Shumate*, 504 U.S. 753; 112 S.Ct. 2242 (1992), and 29 U.S.C. § 1056(d). However, the Supreme Court in *Patterson* specifically held that a Debtor's interest in an ***IRA*** could ***not*** be excluded from property of a bankruptcy estate under § 541(c)(2). All the funds at issue here, if exempt at all, are exempt because they are in IRA's, (not ERISA-qualified pension plans). The court in *Patterson* specifically observed that IRAs are not "pension plans" subject to exemption under 11 U.S.C. § 542(c)(2) because IRA's are expressly excluded from ERISA's anti-alienation requirements (which are set out in 29 U.S.C. § 1056 (d)) under 29 U.S.C. § 1051(6). *Patterson v. Shumate*, 504 U.S. at 762-63. Instead, the *Patterson* case, and the subsequent case of *Roussey v Jacoway*, 544 U.S. 320, 326, 125 S.Ct. 1561, 1566 (2004) held that if IRA's are to be exempted, they must be claimed as exempt under 11 U.S.C. § 522(d)(10)(E) (and probably § 522(d)(12) when it was subsequently added to the Bankruptcy Code). Therefore, the Debtor's arguments that the above claimed exemptions are **not property of the estate** under *Patterson* and § 541(c)(2), or that they are exempt under 29 U.S.C. § 1056(d), are simply incorrect. Instead, if the properties are exempt at all, they are exempt under §§ 522(d)(10)(E) or (d)(12) of the Bankruptcy Code.

**B.    Group SAMA Investment Funds Are Not Exempt.**

2.    The Debtor has claimed as exempt a Group SAMA Interncional IRA in the amount of $254,902.04. However, the Debtor has stipulated that the Group SAMA account in which the $254,902.04 is invested is not an IRA account, or an otherwise "qualified" IRS account, which could be claimed as exempt property in his bankruptcy, outside the existence of some special

circumstance. The question of whether such a special circumstance exists is the question presented to the Court. The parties have stipulated that Dr. Crum withdrew the $254,902.04 from his IRA's or qualified accounts in April of 2008, that he deposited those funds into the Group SAMA account on May 29, 2008, the day before he filed his bankruptcy proceeding, and that those funds remain in that account as of this time. The parties have stipulated that the Group SAMA account is not an IRA or other qualified IRS account; therefore the $254,902.04 in funds invested in that account are not held in a "stock bonus, pension, profitsharing, annuity, or similar plan or contract" as to qualify the funds for exemption under 11 U.S.C. § 522 (d)(10)(E), or in a "fund or account that is exempt from taxation under 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986," as to qualify the funds for exemption under 11 U.S.C. § 522(d)(12).

      3.      The Debtor claims that the funds in the Group SAMA account should still be treated as exempt, in spite of the funds' investment in a non-IRA, non-tax qualified account, because: (1) when he filed his bankruptcy proceeding he was still within the 60 days allowed to roll-over the funds into an IRA or other fund exempt from taxation to preserve his exemption, and (2) he was allegedly deceived by Group SAMA into making the investment in an account which was not an IRA, but which had been represented to him to be an IRA. However, neither of these alleged defenses are sufficient to allow the Debtor to maintain a claim of exemption in the Group SAMA funds. First, it is clear that once the monies were distributed to the Debtor from his prior IRA's and qualified funds, they lost their tax-exempt, protected status. *See*, *Welander v. CIR*, 92 T.C. 866, 868-69 (U.S. Tax Ct. 1989). As the court in *Welander* explained, "The general rule is that IRA distributions are taxable in the year received. Section 408(d)(1). An exception to this rule is effective when the distribution is rolled over into another IRA within 60 days. This exception only

applies if the distribution is actually PAID into another account. Section 408(d)(3)(A). If the distribution is not paid into another account, then the exception *never* applies and the general rule prevails." *Welander v. C.I.R.*, 92 T.C. at 869-70. Thus, when the Debtor took the distribution from his IRA's, the funds immediately became taxable and non-exempt, subject only to an exception if the funds were re-deposited into another qualified account within the allowed 60 day period. It has been stipulated that the funds were deposited into the Group SAMA account and remain in that non-qualified account at this time; thus, it is stipulated that the funds were not deposited into another qualified account within the 60 days as required by the law. Therefore, those funds became non-exempt cash assets in April 2008 when they were distributed to the Debtor, and they remained non-exempt assets when they were deposited in a non-exempt investment account immediately before the Debtor's bankruptcy was filed. Under 11 U.S.C. § 522(b)(4)(D), Roll-over Distributions may be claimed as exempt if they are re-deposited during the 60 day interval permitted by law under either 26 U.S.C. § 402(c)(3) or 11 U.S.C. § 522(b)(4)(D)(ii)(II); but § 522(b)(4)(d) provides no basis for claiming an IRA distribution which has not been re-deposited into a qualified account within the 60-day period allowed.

4. The Debtor may argue that because he was still within the 60-day period for re-depositing the funds when he filed his bankruptcy, that the filing of his bankruptcy allowed him to claim the exemption without complying with the 60-day requirement. However, his failure to re-deposit the funds within the 60-day period, even after the filing of his bankruptcy, removed any question as to the funds' exemptability. Specifically, the Fifth Circuit Court of Appeals in *In re Zibman*, 268 F.3d 298 (5th Cir. 2001)(which dealt with the Texas 6-month exemption for the proceeds from the sale of a homestead) has specifically ruled that when a law provides for the

proceeds of exempt property to remain exempt for a specific limited period of time to allow the funds to be reinvested, then the filing of a bankruptcy petition will not "expurgate" that deadline, and the failure of the Debtor, even after filing his bankruptcy petition, to reinvest the proceeds as required by the statute will cause the exemption to "evanesce," which will "free the Trustee to reach the proceeds as part of the bankruptcy estate." *In re Zibman*, 268 F.3d at 305. *See* also, *In re Schmidt*, 362 B.R. 318, 324 nt. 3 (Bankr. W. D. Tex 2007), and *In re Jones*, 327 B.R. 297, 301-02 (Bankr. S. D. Tex. 2005). Moreover, the explanation given by the Fifth Circuit in *Zibman* of the purpose of time-limited exemptions for proceeds is equally true for the federal requirement that the tax-exempt proceeds of IRA's must be re-deposited into other IRA's within 60 days. Specifically, the Fifth Circuit observed that the objective of the Texas Homestead proceeds exemption was to provide a secure asylum for families from creditors when they sold their home with the intention of reinvesting those proceeds in another homestead, and was *not to protect the proceeds, in and of themselves*. *In re Zibman*, 268 F.3d at 305. Similarly, the purpose of the 60 day window allowed by Federal law is to allow retirement funds to be reinvested from one trustee to another without the loss of the funds' qualification. However, if the intervention of a bankruptcy proceeding would allow the funds to retain their exempt status without reinvestment of the funds within the time period required by law, then this would transform the roll-over law into a protection of the proceeds themselves. *See*, *In re Zibman*, 268 F.3d at 305. The Fifth Circuit rejected such an application of the Bankruptcy Code in *Zibman*, holding instead that since the proceeds there had not been reinvested within the time period allowed, the claim of exemption had been lost. Following the decision in *Zibman*, this court should reject any similar argument by the Debtor here.

  5. Finally, the Debtor may argue that his failure to re-deposit the funds into a qualified IRA within the 60-day time period was the result of misrepresentations by Group SAMA. However, the case law will not support this defense. In the case of *Schoof v. C.I.R.*, 110 T.C. 1 (U.S. Tax Ct 1998), the taxpayers argued that they should be excused from the tax liability resulting from their deposit of qualified funds into an investment which was purported to be an IRA but which had no qualified Trustee. The court disagreed, because the requirement of a qualified trustee was a **fundamental** element of the statutory requirements for an IRA rollover contribution, and not merely a **procedural** defect by the Trustee in executing the rollover. *Schoof v. C.I.R.,* 110 T.C. at 11. In our case, it is stipulated that the Group SAMA investment did not meet the legal requirements of an IRA. The problems associated with the Group SAMA investment were fundamental, not merely procedural. The Debtor argues that all the documents he received were in Spanish, a language in which he is not literate. However, the facts are that he knew or should have known that the documents would be in Spanish, since he invested the funds directly in an account in Costa Rica, and he chose to sign the documents without reading them or having someone read and interpret them for him. Moreover, it is clear from the documents themselves, even though in Spanish, that the investments were being made by him *individually*, not through an "IRA." Couple this with the fact that the investment was made at the last moment, the day before the Debtor filed his petition in bankruptcy, when he was already $38,000 delinquent in his child support payments, and there is simply no showing by the Debtor, as required in *Schoof*, that the Debtor "substantially complied" with the requirements of rolling over a distribution into an IRA under section 408(a) of the Internal Revenue Code as to preserve the funds' tax-qualified status, or their exempt status for the purposes of his bankruptcy proceeding. *See*, *Schoof v. C.I.R.*, 110 T.C. at 11.

6. The Debtor also took $11,000 out of his Fidelity IRA on May 15, 2008 and paid these funds to his fiancé, Trudy Herrmann-Hall (allegedly to pay a past debt). However, because the funds were transferred and not reinvested in an IRA, those funds were not exempt. As explained in *In re Jones*, when proceeds of exempt property are transferred and not reinvested back into exempt property within the time allowed by the law, then the transferred proceeds themselves constitute non-exempt assets of the estate, and they are subject to recovery by the Trustee for the benefit of the estate and its creditors. *See*, *In re Jones*, 327 B.R. 297, 302 (Bankr. S.D. Tex. 2005).

**C.     None of the Debtor's IRA's (or other properties claimed as exempt) Are Exempt From Liability From the Child Support and Alimony Claims Held Against Him.**

7. As discussed above, the debtor's interest in the Group SAMA account and the $11,000 in proceeds of the Fidelity account, if found exempt, are only exempt as an IRA, and proceeds of an IRA, respectively. The parties have also stipulated that the Wachovia IRA and the Fidelity IRA accounts are IRA's exempt from the claims of general creditors. However, even though these funds may be exempt from the Debtor's general creditors, they are not exempt from liability for the child support and alimony obligations owed by the Debtor to Randi Crum, his former wife, and their 2 children who are still minors. The parties have stipulated that the Debtor owed Randi Crum and their children an alimony and child support obligation of $38,298.86 on May 30, 2008, when his petition in bankruptcy was filed. This obligation continues to accrue. This obligation qualifies as a "domestic support obligation" under 11 U.S.C. § 101(14A), which provides as follows:

> **(14A)** The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

  **(A)** owed to or recoverable by--

   **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

   **(ii)** a governmental unit;

**(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

**(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

  **(i)** a separation agreement, divorce decree, or property settlement agreement;

  **(ii)** an order of a court of record; or

  **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

**(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

The alimony and child support obligation owed by the Debtor to Randi Crum and their children was established by the order of the Superior Court, Judicial District of Stamford/Norwalk, Connecticut, by Memorandum of Decision entered on April 8, 2008, a copy of which has been provided to the court. It has not been assigned to any non-governmental entity for the purpose of collecting the Debt, but is being pursued by Randi Crum on behalf of herself and their children. Therefore, this child support/alimony obligation is excepted from the exemptions claimed by the Debtor. Specifically, although the Debtor is able to exempt his IRA's (and other properties) from his general

Document Page 9 of 11

creditors, under 11 U.S.C. § 522(c)(1) a specific exception to these exemptions has been created in the Bankruptcy Code as follows:

> **(c)** Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except–
>
>> **(1)** a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in section 523(a)(5));

Section 523(a)(5) of the Bankruptcy Code provides that, "A discharge under section 727...of this title does not discharge an individual debtor from any debt—... (5) for a domestic support obligation." Therefore, § 522 (c)(1) excepts the alimony and child support obligations owed by the Debtor to Randi Crum, his former spouse, and their children, as "Domestic Support Obligations" from his claims of exemption. In fact, § 522(c)(1) provides that, "notwithstanding any provision of nonbankruptcy law to the contrary, such property ***shall be liable*** for a debt of a kind specified in section 523(a)(5)." *See*, *In re Covington*, 368 B.R. 38, 39-40 (Bankr. E.D. Cal. 2006). Therefore, to the extent the court allows the Debtor's claims of exemption with respect to the IRA's claimed above, the court should limit those exemptions to reflect that such exemptions do not protect the IRA's or their proceeds from liability for the alimony and child support obligations owed by the Debtor to Randi Crum and their children, including the obligations described in paragraphs 2 and 3 of the Memorandum of Decision entered by the Connecticut Superior Court in Cause Number FST FA 4010407 S on April 8, 2008.

**D.     Other Exemption Claims Under 11 U.S.C. §§ 522(b)(3)(B) and 522(b)(4)(D) Are Not Valid**.

8.     Because the Debtor has elected Federal Exemptions, he cannot claim exemptions under 11 U.S.C. § 522(b)(3), so any claim of exemption based on § 522(b)(3) should be denied. However, to the extent any exemptions are permitted, § 522(b)(3) exemptions also do exempt the Debtor's IRA's from liability for his domestic support obligations under 11 U.S.C. § 522(c)(1). Finally, the Debtor's exemption claims under 11 U.S.C. § 522(b)(4) do not add any further rights of exemption, but merely provide guidance for application of exemptions claimed under 522(b)(3)(C) and 522(d)(12). Therefore, no separate exemptions should be allowed under those provisions.

WHEREFORE, PREMISES CONSIDERED, Randi Crum prays that upon hearing the Court will deny and limit the exemptions claimed by the Debtor as set forth above.

Respectfully submitted,

/s/ Coleman Young
Coleman Young
State Bar No. 22174200
TEMPLETON, SMITHEE, HAYES,
   HEINRICH & RUSSELL, L.L.P.
320 S. Polk, Suite 1000
P. O. Box 15010
Amarillo, Texas  79101
Telephone No.  806/324-0324
Telecopy No.   806/379-8568

ATTORNEY FOR RANDI L. CRUM

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the above and foregoing instrument was served upon the following this _____ day of November, 2008, addressed as follows:

| | |
|---|---|
| Mr. Van Northern<br>NORTHERN LAW FIRM<br>112 W. 8th Street, Suite 400<br>Amarillo, Texas 79101 | Via Electronic Notice ☒<br>Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐ |
| Mr. Kent David Ries<br>600 S. Tyler, Suite 1300<br>Box 12058<br>Amarillo, Texas 79101 | Via Electronic Notice ☒<br>Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐ |
| United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242-1496 | Via Electronic Notice ☒<br>Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐ |

                                          /s/ Coleman Young
                                          Coleman Young