

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 20, 2009**          **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RALPH LYLE CRUM, | § | CASE NO. 08-20297-RLJ-7 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

The debtor, Ralph Crum ("Crum"), the chapter 7 trustee, Kent Ries, and creditor Randi Crum have submitted to the Court on joint stipulations their disputes regarding the exemption claims made by Crum to funds maintained in three accounts ($254,902.04, $38,080.64, and $79.58, respectively) as of the filing of Crum's bankruptcy case and to funds ($11,000) conveyed by Crum to a third-party prior to the bankruptcy filing.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Statement of Facts**

The parties have stipulated to the relevant facts that underlie their disputes, which stipulations are set forth as follows:

1. The Debtor, Ralph Crum, filed his first Amended Claims of Exemptions on August 27, 2008, and a Creditor, Randi Crum, and the Trustee, Kent Ries, have filed Objections to those claims of exemptions which . . . [were] set for hearing on November 6, 2008, at 1:30 pm. The Debtor filed additional claims of exemption on November 2, 2008, which the parties agree may be hereafter subject to further objections by creditors and the Trustee. However, the parties agree that the claims of exemptions filed by the Debtor which were set for hearing on November 6, 2008, have not substantially changed (although the legal basis for those exemptions may have been expanded by the Debtor as set forth by the Debtor in its November 2, 2008 amendments), and the parties believe that the issues concerning those claims of exemptions and the objections to exemptions set for hearing on November 6, 2008, are ripe for determination. . . .

    . . .

3. The parties stipulate that the account claimed as exempt identified by the Debtor as "Group SAMA Internacional, G.S.S.A, IRA Account No. 10673534" (the "Group SAMA account") is not an IRA account, or an otherwise "qualified" IRS account, as can be claimed as exempt, without a showing of other circumstances or law by the Debtor, in his bankruptcy proceeding in its current form under federal law, including United States Bankruptcy Code section 522, or the laws of the State of Texas. However, the parties stipulate that the $254,902.04 in funds deposited into the Group SAMA Account on May 29, 2008, were the proceeds of two IRA accounts which had been funded over time by regular contributions from the Debtor's salary or self-employment income, and which funds, if they had remained in those original accounts, would have been exempt under federal law from the claims of his general creditors. The parties do not stipulate that the funds in the original two IRA accounts would have been exempt from the alimony/child support claims of Randi Crum, and that issue is presented to the court for determination.

4. The parties stipulate that the sworn testimony of Ralph Crum in support of his claims of exemptions would be as follows: that he withdrew funds from the IRA and qualified retirement accounts in April, 2008, and when he deposited those funds into the Group SAMA account, he was attempting to "roll over" those same funds in the amount of $254,902.04 into a qualified IRA account[.] Dr. Crum would testify that when he deposited the $254,902.04 into the Group SAMA account, it was under the mistaken belief (based on the misrepresentation by Group SAMA, with no complicity of Ralph Crum) that he was rolling exempt funds into a new IRA that was a "qualified" IRS retirement account. Dr. Crum would testify that only approximately 2 weeks ago did he discover that the Group SAMA accounts were in fact not exempt IRAs or otherwise "qualified" IRS accounts, and that it was a misrepresentation of Group SAMA which resulted in funds from his IRA's and qualified retirement accounts being placed in a non-IRS qualified account. Dr. Crum would testify that all of the documentation provided to him by Group SAMA supporting the investment was entirely written in Spanish, a language in which he is not literate. . . .

5. The Parties stipulate that Dr. Crum withdrew $97,307.83 in funds by a check written payable to himself from his Prudential qualified Retirement Account [the "Prudential IRA"] on April 29, 2008; that Dr. Crum withdrew $157,594.21 in funds by a check written payable to himself from his Wachovia SEP IRA account No. 2790-9071 [the "Wachovia IRA"] on April 26, 2008; that Dr. Crum deposited the funds he received from the Prudential Account and Wachovia Account, totaling $254,902.04, into the Group SAMA account on May 29, 2008; that Dr. Crum filed his petition in Bankruptcy on May 30, 2008; and that the $254,902.04 now remains in the Group SAMA account. The parties agree, in general, that federal law allows a taxpayer 60 days after taking a distribution from an IRA or other qualified retirement account to deposit those funds into another IRA or tax qualified account to avoid such funds losing their tax-deferred and exempt status.

6. The parties stipulate that the Fidelity Retirement account No. 139913995 [the "Fidelity IRA"] in the amount of $38,080.64 (and any increase thereof) is a Roll Over IRA account and that the Wachovia SEP IRA Account No. 2790-9071 in the amount of $79.58 is a SEP IRA account, and that those accounts are exempt under federal law from the claims of Dr. Crum's general creditors. The parties do not stipulate that those two IRA accounts are exempt from the alimony/child support claims of Randi Crum, and that issue is presented to the court for determination[.]

7. The court will be asked to determine Randi Crum's Objection to Exemptions with respect to the Group SAMA and the IRA accounts described above.

      Specifically the court is asked to determine whether the funds in those accounts, to the extent they are found to be exempt from the claims of Dr. Crum's general creditors, are exempt from the alimony/child support claims of Randi Crum, on behalf of herself and their children. The parties stipulate that Randi Crum was awarded in the "Memorandum of Decision" terminating the marriage of Randi Crum and Dr. Crum on April 8, 2008, child support/alimony of $12,000 per month plus the Debtor's obligation to provide health insurance coverage for his 2 minor children; and that Dr. Crum owed Randi Crum child support of $38,298.86 on May 30, 2008, when he filed his petition in Bankruptcy. . . .

8.    The court will be asked to determine, based on the Objections filed by the Trustee and Randi Crum, whether the funds contained in the Group SAMA Account meet the requirements for Dr. Crum to claim those funds as exempt under federal law in his bankruptcy proceeding.

9.    The Parties stipulate that Dr. Crum withdrew $13,000 from his Fidelity IRA on May 15, 2008, and that he has claimed $11,000 of these funds, which he paid to his fiance, Trudy-Herrmann-Hall, before he filed his bankruptcy proceeding, as exempt as "Fidelity IRA Proceeds." The court will be asked to determine, based on the objection filed by the Trustee, whether the funds paid by Dr. Crum to Trudy Herrmann-Hall meet the requirements for Dr. Crum to claim those proceeds as exempt under federal law in his bankruptcy proceeding.

10.   The parties stipulate that the Debtor's claims of exemption of any personal property located at 25 Fanton Hill Rd., in Weston Connecticut, including household goods, furnishings, sculptures and artwork, are withdrawn by Dr. Crum, with prejudice, based on the Memorandum of Decision, the Motions for Articulation filed by the Dr. Crum, the transcript of hearing, and the ruling of the Connecticut Divorce Court on the Motions for Articulation . . . .

### Discussion

A.    <u>The Issues</u>

By the stipulations, pleadings, and briefs submitted in support of their respective positions, the following four basic issues are presented to the Court:

1. Whether the Group SAMA account, which holds $254,902.04, qualifies as exempt property under federal law, including section 522(d) of the Bankruptcy Code, or under the laws of the state of Texas.

2. If the funds in the Group SAMA account are found by the Court to be properly claimed as exempt under either federal or state law, are they specifically exempt from the alimony/child support claims of Randi Crum?

3. Whether the Fidelity IRA account of $38,080.64 and the Wachovia IRA account of $79.58 are specifically exempt from the alimony/child support claims of Randi Crum.

4. Whether the $11,000 that Crum paid to his fiancé, Trudy Herrmann-Hall, before he filed this bankruptcy case, qualifies as exempt property in this bankruptcy case under any claimed federal law exemption made by Crum.

B. <u>Threshold Matters</u>

In Crum's most recently amended "Schedule C -- Property Claimed as Exempt," he checks the box that refers to 11 U.S.C. § 522(b)(2), which is his formal election of the federal exemptions provided for at subsection (d) of section 522. 11 U.S.C. § 522(b)(1). With respect to the three referenced accounts -- the Group SAMA account of $254,902.04, the Fidelity IRA account of $38,080.64, and the Wachovia IRA of $79.58 -- and the $11,000 in proceeds from the Fidelity IRA, Crum takes the shotgun approach, asserting exemption claims under 11 U.S.C. §§ 522(d)(12), 522(b)(3)(A) and (C), 522(b)(4)(B)(i) and (ii)(II), 522(b)(4)(D), 522(d)(10)(E), 29 U.S.C. § 1056(d); *Patterson v. Shumate*, 504 U.S. 753 (1992) (not property of the estate), and *Rousey v. Jacoway*, 161 L.Ed.2d 563 (2004).

By electing the section 522(d) federal exemptions, Crum may not also claim the accounts as exempt under state law pursuant to section 522(b)(3) of the Bankruptcy Code. 11 U.S.C. § 522(b)(1) (debtor may exempt the property listed in paragraph (2) of section 522(b) or, in the alternative, paragraph (3) of section 522(b)).

Crum's exemption claims under 29 U.S.C. § 1056(d), *Patterson v. Shumate*, and *Rousey v. Jacoway* are not viable claims. First, Crum has made no credible argument to support or to even explain such exemption claims. The Court can only guess that such exemption claims are somehow based on a contention that the funds in the three accounts, and the $11,000 transferred to Crum's fiancé, are not property of the estate. The parties have stipulated that the Group SAMA account is not a "qualified" retirement account; it is clearly property of the estate. The $11,000 is obviously not property of the estate as it represents funds transferred by Crum to his fiancé; it is not property over which Crum may make an exemption claim. The Fidelity and Wachovia IRA accounts, on the other hand, are, as stipulated, valid IRA accounts and thus exempt from taxation and thus exempt from the claims of creditors; their exempt status does not arise from any theory that such accounts are property of the bankruptcy estate.

    C.    <u>The Section 522(d) Exemption Claim to the Group SAMA Account</u>

        (1)    <u>The exemption claim under subsection (d)(10)(E) of section 522</u>

Crum claims the Group SAMA account is exempt under subsections (d)(10)(E) and (d)(12) of section 522. Section 522(d)(10)(E) states that a debtor may exempt a right to receive a "payment under a qualified stock bonus, pension, profitsharing, annuity, or similar plan or contract. . . ." 11 U. S. C. § 522(d)(10)(E). This provision is not applicable to the Group SAMA account because such account is not, as stipulated, a qualified stock bonus, pension,

profitsharing, annuity, or similar plan or contract. Crum has not articulated any argument that allows for any different conclusion. The Court denies Crum's exemption claim under section 522(d)(10)(E).

          (2)      <u>The exemption claim under subsection (d)(12) of section 522</u>

Section 522(d)(12) provides an exemption for "retirement funds" that are in a fund or account that is exempt from taxation under the applicable provisions of the Internal Revenue Code. 11 U.S.C. § 522(d)(12). Crum's exemption claims include a reference to section 522(b)(4)(D), which provision further defines whether a retirement fund satisfies an exemption claim under subsection (d)(12). In this regard, paragraph (4)(D) provides that funds distributed from a qualified account and subsequently "rolled over" into another qualified account must have been deposited into the second account not later than sixty days after the distribution from the former account. 11 U.S.C. § 522(b)(4)(D).

The Group SAMA account is not a qualified account; the "rollover" here was to an unqualified account, as a result. Sixty days passed without Crum effecting a deposit of the $254,902.04 into a qualified account. Crum argues, however, that it is inequitable to disallow his exemption claim to the Group SAMA account because he fully intended to rollover the funds into a qualified account. In this regard, he was told by a Group SAMA representative that the account was indeed a qualified account. He also argues that, as the accounts and the funds are not exempt until allowed exempt by the bankruptcy court and thus held by the trustee for the benefit of the bankruptcy estate, he had no ability to effect a proper rollover were he aware at the time that the Group SAMA was not a qualified account. From this circumstance, Crum contends that the Court should follow the so-called "snapshot" rule and find that, as of the date of the

filing of the bankruptcy case, the Group SAMA account was indeed exempt as he still had approximately thirty days to properly reinvest the proceeds into a qualified account.

The Fifth Circuit has rejected Crum's construction of the snapshot rule. *See In re Zibman*, 268 F.3d 298 (5th Cir. 2001). In *Zibman*, the Fifth Circuit held that, in determining whether property is exempt, a court must look to all the law and the facts that exist on the day the debtor filed the bankruptcy petition. *Id*. at 302. This includes any limitation or condition required by the law providing for the exemption. *See id*. at 304. "[I]t is the *entire* . . . law applicable on the filing date that is determinative." *Id*. In *Zibman*, the debtors sold their homestead prior to filing bankruptcy. *Id*. at 300. The debtors filed bankruptcy and claimed that the proceeds were exempt under Texas law. *Id*. The Texas statute provides that proceeds from the sale of a homestead are exempt from creditors' claims for six months after the sale. *Id*. at 302 (citing TEX. PROP. CODE ANN. § 41.001). The trustee, however, argued that because the debtors failed to reinvest the proceeds into a new homestead as required by Texas law, the debtors lost their exemption in the sale proceeds. *Id*. at 301. The Fifth Circuit agreed, holding that the debtors had to reinvest the proceeds from the sale of their homestead as required by the statute providing for the exemption. *Id*. at 305. As the debtors failed to timely reinvest the proceeds into a new Texas homestead (indeed it was clear they had no intention of doing so), the exemption claim to the proceeds was disallowed. *Id*. Thus, while the Court determines whether the property here is exempt as of the time of the filing of the bankruptcy case, the Court must take into account all facts and law existing at that time, including any limitation on the exemption. *See id*. at 304.

The funds held in the Group SAMA account were withdrawn from two valid and qualified IRA accounts, the Prudential IRA account (from which $97,307.93 was withdrawn) and the Wachovia IRA account (from which $157,594.21 was withdrawn). Crum obviously attempted to effect a rollover, but, as per the stipulations, he failed to reinvest the proceeds into a qualified account within sixty days as required by the statute. Crum clearly failed to satisfy the requirements of the exemption. While *Zibman* concerns Texas exemption laws, its holding that, in assessing an exemption claim, all facts and law -- in this case federal law -- existing at the time the bankruptcy is filed must be considered is applicable here. The sixty-day reinvestment requirement must be observed. The sixty days passed and there is no evidence that Crum would have, absent the circumstances arising from the bankruptcy filing, reinvested the proceeds into a qualified account.

(3)     Possible tolling of the sixty days

The remaining issue, then, is whether Crum is entitled to a tolling of the sixty-day time frame to begin on the date of the bankruptcy filing. An argument for tolling may be inferred from Crum's contention that he would have been prevented from effecting a rollover to a qualified account because the Group SAMA account belonged to the bankruptcy estate until his exemption claim is allowed. An argument for tolling may have some merit. *See Zibman*, 268 F.3d at 301 n. 8. Crum did not, however, seek a tolling of the sixty days prior to the expiration of the sixty days (i.e., within thirty days after the bankruptcy was filed). Despite any practical impediments to effecting a rollover within the time period before exemptions are allowed (or not), the debtor must, at least, take some action to protect his rights (i.e., request tolling) before the rollover period expires. *See In re Zibman*, 268 F.3d at 305 n. 30; *see also In re Bading*, 376

B.R. 143, 150 (Bankr. W.D. Tex. 2007) (citing *Zibman* for the proposition that the debtor must request tolling from the court). Tolling is not proper here.

          (4)        Claim of Randi Crum against the Group SAMA account

Having determined that the Group SAMA account does not qualify as exempt property under the Bankruptcy Code, the Court need not address the issue of whether the account is specifically exempt from the alimony/child support claims of Randi Crum. Despite this, given that the parties have specifically requested that the Court decide this issue, the Court concludes that the alimony/child support claims clearly constitute a domestic support obligation and therefore would not be exempt from the claims of Randi Crum. *See* 11 U.S.C. §§ 101(14)(A) (contains definition of a domestic support obligation) and 522(c)(1) (provides that unless the bankruptcy case is dismissed, exempted property under section 522 does not exempt such property from a debt that arises from a domestic support obligation).

    D.    Exemption Claim to Fidelity and Wachovia Accounts

The parties have stipulated that Crum's interest in the Fidelity IRA and Wachovia IRA accounts ($38,080.64 and $79.58, respectively) is exempt under section 522(d)(12). Under section 522(c), exempt property, while generally not liable for the debtor's pre-bankruptcy debts, remains liable for a debt that arises from a "domestic support obligation." 11 U.S.C. § 522(c) (which refers to section 523(a)(5), which provides that a debtor is not discharged from debt that arises from a domestic support obligation). Crum's obligations to Randi Crum and their children satisfy the definition of a domestic support obligation under the Bankruptcy Code. *See* 11 U.S.C. § 101(14A). Crum's obligation is owed to a former spouse; is in the nature of alimony, maintenance, or support of Randi Crum (and their children); was established under a court order;

and has not been assigned. *See id.* The Fidelity IRA and Wachovia IRA accounts are generally exempt from the claims of Crum's pre-petition creditors, but are not exempt from the claims of Randi Crum.

  E. <u>Exemption Claim to the $11,000 Transferred by Crum to Trudi Herrmann-Hall</u>

The $11,000 transferred by Crum to Trudi Hermann-Hall is not, as stated above, property of the bankruptcy estate because of the transfer. Crum has no ownership interest in the funds and no legal basis to claim an exemption to such funds.

**Conclusion**

In accordance with the foregoing authorities, the Court denies Crum's exemption claim to the Group SAMA account. The Fidelity IRA account and the Wachovia IRA account are each generally exempt from creditors under section 522(d)(12) of the Bankruptcy Code, but are not exempt from the claim of Randi Crum that is in the nature of a domestic support obligation. The Court does not address the balance of the exemption claims made by Crum as no objections have been lodged to such claims.

### End of Memorandum Opinion ###